# UNITED STATES BANKRUPTCY COURT
## Middle District of Florida

In Re ___Roberts Land & Timber Investment Corp._____

Case No. _____
(if known)

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## *DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

### 1. Income from employment or operation of business

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

|  | AMOUNT | SOURCE |
|---|---|---|
| 2010 | 193,267.34 | Real Estate Development and Real Estate Holding Company Activity |
| 2009 | 1,700,033.79 | Real Estate Development and Real Estate Holding Company Activity |
| 2008 | 1,012,950.17 | Real Estate Development and Real Estate Holding Company Activity |

**2. Income other than from employment or operation of business**

None
☒

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                                              SOURCE

**3. Payments to creditors**

None
☒

*Complete a. or b., as appropriate, and c.*

*a. Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐

*b. Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. If the debtor is an individual, indicate with an asterisk (*)any payments that were made to a creditor on account of a domestic support obligation or as part of an alternativerepayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

*Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after date of adjustment.*

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Community State Bank<br>Post Office Drawer 460<br>Starke, FL 32091 | April 20, 2011 and May 19, 2011 | $9,682.41 | 164,802.93 |
| Patsy Jones Elixson<br>Union County Tax Collector<br>55 W. Main Street, Room 108<br>Lake Butler, FL 32054 | April 29, 2011 | $18,614.96 | $00.00 |

None

☒

     *c. All debtors:* List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None

☐

     a.    List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Roberts Land & Timber Investment Corp., et al. v. Farm Credit of Florida Case No. 2011-173-CA | Action for Declaratory Judgment - Determine Amount, if any, of Alleged Deficiency | Third Judicial Circuit Columbia County Lake City, Florida | Plaintiffs voluntarily dismissed action. |
| Roberts Land & Timber Investment Corp. v. TD Bank, N.A. Case No. 2010-150-CA | Action for Declaratory Judgment | Eighth Judicial Circuit Union County Lake Butler, Florida | Voluntary Dismissal after successful Mediation Agreement. |

None



     b.    Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None ☒      List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**6. Assignments and Receiverships**

None ☒      a.      Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None ☒      b.      List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

**7. Gifts**

None ☐      List all gifts or charitable contributions made within one year immediately preceding the commencement of this case, except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |
| VSU Foundation 1500 North Patterson Street Valdosta, GA 31698 | None | April 8, 2011 | $100.00 donation |

Bankruptcy2011 ©1991-2011, New Hope Software, Inc., ver. 4.6.2-759 - 32200-302Y-02100 - Adobe PDF

**8. Losses**

None ☒　　　List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES, AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ☐　　　List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Andrew J. Decker, III<br>The Decker Law Firm, P.A.<br>Post Office Drawer 1288<br>Live Oak, FL 32064 | May 19, 2011 | $45,000.00 |

**10. Other transfers**

None ☐　　　a.　　List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| TD Bank, N.A.<br>formerly Mercantile Bank<br>Post Office Box 100201<br>Columbia, SC 29202<br><br>Relationship: None | December 16, 2010 | Deed in lieu. The amount of the debt was $1,235,000.00. The appraised value was between $1,300,000.00 (Bank's appraisal) and $1,845,000.00 (Debtor's appraisal). |

b.  List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

None
☒

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11.  Closed financial accounts**

None
☒

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case.  Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12.  Safe deposit boxes**

None
☒

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case.     (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13.  Setoffs**

None
☒

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case.    (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

Bankruptcy2011 ©1991-2011, New Hope Software, Inc., ver. 4.6.2-759 - 32200-302Y-02010 - Adobe PDF

**14. Property held for another person**

None

☒

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None

☒

If the debtor has moved within the three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None

☒

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Sites**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None

☐

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|
| Woodstock Industrial Site 1483 Acres +/- Baker County, Flroida | St. Johns River Water Management District | April 13, 2011 | See attached Consent Order 2009-51 |

IN RE:

Roberts Land & Timber Investment Corp.    F.O.R. NO.: 2009-51
Woodstock Megasite
Baker County, Florida
Compliance Item no. 933731

_____/

## CONSENT ORDER

This Consent Order is entered between the St. Johns River Water Management District ("District") whose address is 4049 Reid Street, Palatka, Florida 32177 and Roberts Land & Timber Investment Corp. ("Respondent") whose principal address is 12469 West State Road 100, Lake Butler, FL 32054 and whose mailing address is P.O. Box 233, Lake Butler, FL 32054, to settle certain matters at issue between them under Chapter 373, Florida Statutes (F.S.) and Chapter 40C-4, Florida Administrative Code (F.A.C.).

## FINDINGS OF FACT

1. The District, a special taxing district created by Chapter 373, Florida Statutes (F.S.), is empowered to administer and enforce the provisions of Chapter 373, F.S., and the rules promulgated thereunder.

2. The District is specifically authorized to administer and enforce the permitting programs established pursuant to Sections 373.413 and 373.416, F.S. The District has implemented the programs through promulgation of Chapters 40C-4, 40C-40, 40C-42, 40C-44 and 40C-400, F.A.C.

3. Respondent owns or controls approximately 1,420.24 acres of real property in Sections 08, 09, 16, and 17, Township 3 south, Range 20 east, Baker County, Florida (the "Subject Property").

4. Respondent purchased the Subject Property on March 1, 2002.

5. On August 3, 2007, Respondent submitted to the District a petition (application number 16-003-112677-1) for a formal wetland and surface water determination (the "Application") on the Subject Property. The Formal Wetland and Surface Water Determination was issued on November 18, 2008.

6. On October 2, 4, and 11, 2007, District staff inspected the Subject Property as part of the review of the Application. District staff observed the recent construction of fill roads crossing wetland habitat, ditches constructed in wetland habitat, and the construction of upland roads on the Subject Property. Respondent did not obtain any permits from the District for these activities.

1



7.    On September 18, 2008, District staff mailed Respondent a notice of violation letter. A copy of the September 18, 2008 letter is attached hereto and incorporated herein as Exhibit "A."

8.    On October 7, 2008, District staff conducted a site inspection of the Subject Property with Respondent and Respondent's consultant. Based on a review of aerial maps, District site inspection, and further site investigations by Respondent's consultants, the following activities were documented:

       a.  Respondent constructed approximately 2.64 miles of ditches in wetlands (identified as Ditches A through J on the composite map attached hereto and incorporated herein as Exhibit "B"); and

       b.  Respondent constructed an earthen fill road that crosses a wetland, impacting approximately 1.6 acres of wetland habitat (identified as "ERP Road" on Exhibit B to this Consent Order); and

       c.  Respondent constructed silvicultural roads, and operated and maintained other silvicultural roads that were constructed after 1984 but before Respondent's purchase of the Property (collectively identified as orange-brown colored "roads" on Exhibit B to this Consent Order).

9.    All of the activities described above were conducted without an Environmental Resource Permit ("ERP").

10.    On January 22, 2009, Respondent's consultant submitted to the District a Notice of Intent to Construct a Chapter 40C-400.500 General Permit for Construction, Operation, Maintenance, Alteration, Abandonment or Removal of a Minor Silvicultural Surface Water Management System (no. 43-003-121103-1). The District determined that the activities in the Notice of Intent qualified for a 40C-400.500 Noticed General Permit, but the permit has since expired because construction was not completed within one year of permit issuance.

11.    On February 25, 2011, Respondent submitted an ERP application (number 4-003-112677-2) for after-the-fact authorization to construct the road identified as the ERP Road on Exhibit B.

## CONCLUSIONS OF LAW

12.    The District has jurisdiction over Respondent, the Subject Property and project site, and the activities thereon. Sections 373.069(2)(c), 373.413 and 373.416, F.S.

2



13.     Respondent's activities described herein constitute the construction, operation, and maintenance of a surface water management system under Chapter 40C-4, F.A.C. The commencement of such construction without first obtaining an ERP from the District constitutes a violation of Chapter 373, F.S., and Chapter 40C-4, F.A.C. Section 373.430(1), F.S., and Sections 40C-4.041(1), (2)(b)2., and (2)(b)8., F.A.C.

14.     The District is authorized to commence a cause of action in circuit court and seek a civil penalty in an amount not exceeding Ten Thousand Dollars ($10,000.00) per offense per day for violations of Chapter 373, F.S. Section 373.129(5), F.S.

15.     The District is authorized to recover investigative costs and reasonable attorneys' fees expended in the enforcement of its programs and those delegated to it. Section 373.129(6), F.S.

## CORRECTIVE ACTION

16.     Respondent shall not undertake any further construction or any further dredging or filling on the Subject Property, unless authorized by District permit or this Consent Order.

17.     Respondent agrees to complete the following corrective actions within the timeframes set forth herein:

(a)     Respondent shall restore the ditches within the timeframes and within the manner more specifically described below.

(b)     Respondent shall obtain an after-the-fact ERP for the area shown on Exhibit B as "ERP Road;" or restore the wetland road crossing identified on Exhibit B to this Consent Order as "ERP Road" within the timeframes and in the manner more specifically described below.

(c)     Respondent shall, within one hundred sixty-five (165) days of rendition of this Consent Order, apply and qualify for a noticed general permit under Chapter 40C-400, F.A.C., to construct improvements to the silvicultural roads and associated ditches identified on Maps A through E on Exhibit B to this Consent Order, within the timeframes and in the manner more specifically described below.

### General

(d)     Respondent shall begin to implement the restoration work within one hundred twenty (120) days of rendition of this Consent Order and shall complete all restoration work, except maintenance and monitoring, within three hundred sixty-five (365) days of rendition of this Consent Order.

3



(e) Notice. At least two weeks before starting any restoration activity in any restoration area, Respondent shall notify the District in writing by mail and email. The notice will provide an approximate start date and end date for restoration activity. Notices shall be sent to:

(1) Ruth Bouman
St. Johns River Water Management District
7775 Baymeadows Way, Suite 102
Jacksonville, FL 32256
Tel: (904) 730-6263
Fax: (904) 730-6292
Email: rbouman@sjrwmd.com

and

(2) Dale Lovell
St. Johns River Water Management District
7775 Baymeadows Way, Suite 102
Jacksonville, FL 32256
Tel: (904) 730-7919
Fax: (904) 730-6292
Email: dlovell@sjrwmd.com

(f) Erosion and Sediment Control. Respondent shall install and maintain all erosion, sedimentation, siltation, and turbidity control measures necessary to prevent erosion, sedimentation, siltation, and turbidity in adjacent or nearby wetland habitat and downstream waters. Respondent shall install control measures before beginning restoration and will inspect and maintain all control measures until the restored ditches or roads are stabilized with vegetation that is sufficient to prevent scour, erosion, siltation, and sedimentation. If any erosion, sedimentation, siltation, or turbidity occurs as a result of the restoration activities, then Respondent shall immediately take additional control measures and corrective action. Control measures include such practices as the proper installation of silt fencing, hay bales, erosion control mats, and temporary weirs. All control measures will be installed and maintained as recommended in the *Florida Stormwater, Erosion and Sedimentation Control Inspectors' Manual*, a copy of which has been provided by the District to Respondent.

(g) During any restoration activity, Respondent shall avoid impacting adjacent wetlands.

Ditch Restoration

(h) Within three hundred sixty-five (365) days of rendition of this Consent Order, Respondent shall have restored Ditches A through J, as identified

4



on Exhibit B to this Consent Order, and any associated feeder ditches. Restoration of these ditches shall be conducted in the following manner:

(1)     Respondent shall remove the excavated and side-cast material from the wetland areas adjacent to the ditches. All excavated and side-cast material shall be placed back into each ditch. The target elevation shall be the adjacent land elevation so that the land is restored to its pre-construction elevations, including pre-construction land contours.

(i)     Respondent shall conduct baseline monitoring in accordance with the Monitoring Plan, attached hereto and incorporated herein as Exhibit "C," and submit to the District a baseline monitoring report no later than thirty (30) days after completing restoration of each restoration area identified as ditches A-J on Exhibit B. Within thirty (30) days of the District sending Respondent written questions on the monitoring report, Respondent shall respond, in writing, to the District's questions.

(j)     Respondent shall conduct annual monitoring of the restoration areas in accordance with the Monitoring Plan (Exhibit C to this Consent Order) once a year for three consecutive years or until successful establishment of the vegetative cover sufficient to meet the success criteria set forth in Exhibit C.

ERP Road

(k)     Within one hundred eighty (180) days of rendition of this Consent Order, Respondent shall have provided all of the information needed to complete after-the-fact ERP application number 4-003-112677-2. Upon issuance of any after-the-fact ERP, Respondent shall comply with all conditions of the permit.

(l)     If any of the following occur, Respondent shall commence the restoration of the ERP Road in accordance with paragraphs 17(m) and 17(n), below:

(1) Respondent fails to provide all of the information needed to complete the ERP application within one hundred eighty (180) days of rendition of this Consent Order, as required by paragraph 17(k); or

(2) Respondent fails to obtain an ERP within two hundred seventy (270) days of rendition of this Consent Order.

(m)     If restoration is required pursuant to paragraph 17(l), restoration of the ERP Road shall be accomplished by Respondent as follows:

5



(1) Within three hundred thirty (330) days of rendition of this Consent Order, Respondent shall restore the restoration area identified as "ERP Road" on Exhibit B to its original grade. The re-grading work includes removing all unauthorized fill and debris. Respondent shall re-grade the wetland to match the elevations of the adjacent wetland habitat.

(2) Within three hundred thirty-five (335) days of rendition of this Consent Order, Respondent shall arrange a site inspection with District staff to review the as-built condition of the wetland restoration area. If District staff determines that additional restoration grading is required, Respondent shall complete that restoration grading within three hundred forty (340) days of rendition of this Consent Order.

(3) Within thirty (30) days of receiving written District notification that historic grade has been re-established or within three hundred sixty-five (365) days of rendition of this Consent Order, whichever is earlier, Respondent shall plant three gallon containers of pond cypress (*Taxodium ascendens*) red maple (*Acer rubrum*) and tupelo (Nyssa sp.), or other appropriate wetland tree species approved in writing by the District, on 15-foot centers throughout the wetland restoration area.

(n) Respondent shall maintain and monitor the restoration area identified as "ERP Road" on the Map attached as Exhibit B to this Consent Order as follows:

(1) Respondent shall monitor and maintain the restoration area in accordance with the Monitoring Plan (Exhibit C to this Consent Order).

(2) Within thirty (30) days of completion of the planting or within three hundred ninety-five (395) days of rendition of this Consent Order, Respondent shall submit to the District three (3) copies of a baseline report, utilizing District form EN-55. The report shall include wetland species planted, number of plants installed, monitoring locations, transects, dates of maintenance, and photo stations.

(3) Respondent shall submit an annual monitoring report on August 1 of each year, for three consecutive years, in accordance with the Monitoring Plan (Exhibit C to this Consent Order), or until the District deems, in writing, that the restoration area is successful.

6



(4) If District staff determines that the success criteria described in the Monitoring Plan (Exhibit C to this Consent Order) have not been achieved by August 31, 2015, within the restoration area:

    a. Respondent shall submit a remediation plan to the District for review and approval no later than thirty (30) days following notification by the District. The plan shall include a narrative describing the type and causes of failure and contain a complete set of plans for redesign and/or replacement planting of the restoration area so that the success criteria described in the Monitoring Plan (Exhibit C to this Consent Order) will be achieved.

    b. Respondent shall, within thirty (30) days of the District's written approval of the remediation plan, begin implementation of the plan. The success criteria as stated in the Monitoring Plan (Exhibit C to this Consent Order) or as modified by the remediation plan shall be achieved.

    c. Respondent shall replant and monitor the failed restoration area in accordance with the specifications provided by the District within thirty (30) days of notification by the District if Respondent fails to timely submit a remediation plan or the remediation plan is unacceptable to the District.

Silvicultural Roads

(o) Within one hundred sixty-five (165) days of rendition of this Consent Order, Respondent shall apply and qualify for a noticed general permit under Section 40C-400.500, F.A.C., to construct improvements to the silvicultural roads and associated ditches constructed after 1984 (identified as orange-brown colored "roads" on the Map attached as Exhibit B to this Consent Order) to ensure compliance with Chapter 40C-400.500 General Permit for Construction, Operation, Maintenance, Alteration, Abandonment or Removal of Minor Silvicultural Surface Water Management Systems.

(p) Within ten (10) days of completion of the improvements to the silvicultural roads and associated ditches identified in the preceding paragraph, Respondent shall notify the District to inspect. District staff shall notify Respondent, in writing, of any additional remedial work required and Respondent shall complete that remedial work within twenty (20) days of notification by the District.

(q) If Respondent fails to obtain a noticed general permit and construct improvements required by paragraph 17(o) and (p), above, Respondent shall, within three hundred thirty (330) days of rendition of this Consent

7



Order, restore the roads and associated ditches to the adjacent areas' natural grade and elevation.

(r)    If restoration is required pursuant to paragraph 17(q), restoration of the Silvicultural Roads shall be accomplished by Respondent as follows:

    (1)    Within three hundred thirty (330) days of rendition of this Consent Order, Respondent shall restore the restoration areas (roads and associated ditches) identified as "Roads" on Exhibit B to the adjacent areas' natural grade and elevation. The re-grading work includes removing all unauthorized fill and debris. Respondent shall re-grade the wetland areas to match the elevations of the adjacent wetland habitat.

    (2)    Within three hundred thirty-five (335) days of rendition of this Consent Order, Respondent shall arrange a site inspection with District staff to review the as-built condition of the restoration areas. If District staff determines that additional restoration grading is required, Respondent shall complete that restoration grading within three hundred forty (340) days of rendition of this Consent Order.

    (3)    Within thirty (30) days of receiving written District notification that historic grade has been re-established or within three hundred sixty-five (365) days of rendition of this Consent Order, whichever is earlier, Respondent shall plant three gallon containers of pond cypress (*Taxodium ascendens*) red maple (*Acer rubrum*) and tupelo (Nyssa sp.), or other appropriate wetland tree species approved in writing by the District, on 15-foot centers throughout the wetland portions of the restoration areas.

(s)    Respondent shall maintain and monitor the restoration areas identified as "Roads" on Exhibit B to this Consent Order as follows:

    (1)    Respondent shall monitor and maintain the restoration areas in accordance with the Monitoring Plan (Exhibit C to this Consent Order).

    (2)    Within thirty (30) days of completion of the planting or within three hundred ninety-five (395) days of rendition of this Consent Order, Respondent shall submit to the District three (3) copies of a baseline report, utilizing District form EN-55. The report shall include wetland species planted, number of plants installed, monitoring locations, transects, dates of maintenance, and photo stations.

    (3)    Respondent shall submit an annual monitoring report on August 1 of each year, for three consecutive years, in accordance with the



Monitoring Plan (Exhibit C to this Consent Order), or until the District deems, in writing, that the restoration areas are successful.

(4) If District staff determines that the success criteria described in the Monitoring Plan (Exhibit C to this Consent Order) have not been achieved by August 31, 2015, within the restoration areas:

a. Respondent shall submit a remediation plan to the District for review and approval no later than thirty (30) days following notification by the District. The plan shall include a narrative describing the type and causes of failure and contain a complete set of plans for redesign and/or replacement planting of the wetland portions of the restoration areas so that the success criteria described in the Monitoring Plan (Exhibit C to this Consent Order) will be achieved.

b. Respondent shall, within thirty (30) days of the District's written approval of the remediation plan, begin implementation of the plan. The success criteria as stated in the Monitoring Plan (Exhibit C to this Consent Order) or as modified by the remediation plan shall be achieved.

c. Respondent shall replant and monitor the failed restoration areas in accordance with the specifications provided by the District within thirty (30) days of notification by the District if Respondent fails to timely submit a remediation plan or the remediation plan is unacceptable to the District.

18. Respondent agrees to pay a settlement amount of Eight Thousand Three Hundred Thirty-Three Dollars and No Cents ($ 8,333.00) due to violations of Chapter 373, F.S., and Chapter 40C-4, F.A.C. In lieu of making this payment, Respondent will rehabilitate approximately 4.2 miles of fire lines at Lochloosa Wildlife Conservation Area in accordance with the Rehabilitation Plan attached hereto and incorporated herein as Exhibit "D" ("LWCA Rehab. Plan"). Respondent shall commence work within thirty (30) days of rendition of this Consent Order and shall complete said work within one hundred twenty (120) days of rendition of this Consent Order. Prior to commencing work at LWCA, Respondent and District shall execute the Special Use Authorization attached hereto and incorporated herein as Exhibit "E". Upon written request of the Respondent, the timeframe to complete the work described in this paragraph may be extended if the District determines, in its sole judgment and discretion, that an extension is warranted for delays resulting from inclement weather. Said request must be in writing and shall provide: (1) a description of the delay and its probable duration, and (2) the specified portion of the work affected. The granting of such an extension shall be in writing.

19. Respondent also agrees to reimburse the District for investigative costs and attorneys' fees incurred by the District in resolving this matter in the amount of Nine

9



Hundred Eighty-Nine Dollars and Ninety-One Cents (\$ 989.91). Respondent shall deliver to the District a cashier's check or money order in the total amount of Nine Hundred Eighty-Nine Dollars and Ninety-One Cents, payable to the St. Johns River Water Management District within ten (10) days of rendition of this Consent Order. Any sums unpaid within the time frames provided herein shall bear interest at the rate of 1.5 percent per month until paid.

20.     Respondent agrees to pay the District stipulated penalties in the amount of One Hundred Dollars (\$100.00) per day for each and every day Respondent fails to timely perform any of the corrective actions contained in paragraphs 17, 18, and 19 of this Consent Order. A separate stipulated penalty shall be assessed for each failure to timely perform each corrective action in this Consent Order. Within thirty (30) days of written demand from the District, Respondent shall make payment of the appropriate stipulated penalties to the District. Payment shall be by cashier's check or money order made payable to the St. Johns River Water Management District, 4049 Reid Street, Palatka, Florida 32177-2529. The District may make demands for payment at any time after Respondent fails to timely perform a corrective action. If the District is required to file a lawsuit to recover stipulated penalties under this paragraph, the District will not be foreclosed from seeking civil penalties for violations of this Consent Order in an amount greater than the stipulated penalties due under this paragraph.

21.     The District agrees, for and in consideration of the complete and timely performance of the obligations set forth in this Consent Order, that entry of this Consent Order is dispositive of the violations contained herein, and the District waives its rights to seek judicial imposition of damages or civil or criminal penalties for the violations contained herein.

22.     By executing this Consent Order, Respondent waives its right to judicial review or an administrative hearing on the terms of this Order and waives its rights, including any defenses, under Section 120.69, F.S.

23.     The District expressly reserves the right to initiate appropriate legal action to prohibit any future violations of Chapter 373, F.S., or the rules of the District.

24.     Performance of the terms of the Consent Order does not relieve Respondent of any need to comply with applicable federal, state, or local laws, rules or ordinances. In addition, the rights of substantially affected persons as defined in Chapter 120, F.S., who are not parties to this Order, are not abrogated by matters agreed to herein.

25.     Respondent shall allow all authorized District representatives access to the Subject Property at reasonable times for the purpose of determining compliance with the terms of this Consent Order.

10



26.    This Consent Order will become effective after rendition (filing) by the District Clerk, which will occur after its execution by Respondent and the Executive Director on behalf of the District.

27.    Upon rendition, this Consent Order will constitute a final administrative order of the District, and the terms and conditions set forth may be enforced in a court of competent jurisdiction pursuant to Sections 373.129 and 120.69, F.S.

28.    No modifications of the terms of this Consent Order shall be effective until reduced to writing and executed by both the Respondent and the District.

RESPONDENT
ROBERTS LAND & TIMBER
DEVELOPMENT CORP.
Investment

4/7/2011
DATE

BY: _____
(Signature)
Avery C. Roberts, President
(Print Name and Title)

ST. JOHNS RIVER WATER
MANAGEMENT DISTRICT

DATE

BY:_____
Kirby B. Green III, Executive Director

RENDERED this_____day of_____ _____, 2011.

_____
Christopher Mitchell, DISTRICT CLERK

11



copies to:

Janice Unger – Palm Bay
Dale Lovell – Jacksonville
Karen Ferguson, Esquire

Wayne Flowers, Esquire
Lewis, Longman & Walker, P.A.
245 Riverside Avenue, Suite 150
Jacksonville, FL 32202





# St. Johns River
## Water Management District

Kirby B. Green III, Executive Director • David W. Fisk, Assistant Executive Director
David Miracle, Jacksonville Service Center Director

7775 Baymeadows Way • Suite 102 • Jacksonville, FL 32256 • (904) 730-6270 • Fax (904) 730-6292
On the Internet at *www.sjrwmd.com*.

September 18, 2008

Roberts Land and Timber
Attn: Avery C. Roberts
12469 West State Road 100
Lake Butler, FL 32054

Re:     Woodstock Megasite
        Compliance Item No. 918214;  Permit 112677-1
        Please reference the compliance item number on all communications with the District

Dear Mr. Roberts:

Based on a recent site inspection and review of historical photos it appears you have
performed activities on the above referenced property, including dredge and fill in
jurisdictional wetlands, without obtaining the required District permit.

We recommend construction cease immediately and resume only if and when the District issues
the necessary permit.Additionally, the work you have already performed requires a permit and
must be addressed through the permitting process and/or through a consent agreement with the
District.

Please contact me at (904) 730-6263 within 15 days of receipt of this letter to discuss this
violation.

Sincerely,

Ruth Bouman

Ruth Bouman
Regulatory Scientist II
Department of Water Resources

cc:     Miracle, David
        Lovell, Kenneth
        RIM- Palatka

EXHIBIT "A"

------------------------------------------- GOVERNING BOARD -----------------------------------------------------

| David G. Graham, CHAIRMAN<br>JACKSONVILLE | Ann T. Moore, SECRETARY<br>BUNNELL | Duane L. Ottenstroer, TREASURER<br>JACKSONVILLE | Susan N. Hughes<br>PONTE VEDRA |
| Michael Ertel<br>OVIEDO | Hersey "Herky" Huffman<br>ENTERPRISE | Arlen N. Jumper<br>FORT McCOY | William W. Kerr<br>MELBOURNE BEACH | W. Leonard Wood<br>FERNANDINA BEACH |









RECEIVED











AREA E
BAKER COUNTY, FLORIDA
LEGEND
PROPOSED DITCH BLOCKS
CULVERT - ON GRADE
RECEIVED
MAP
AREAS
A-E

Exhibit B – Page 6

EXHIBIT C

MONITORING PLAN

**Woodstock Megasite Consent Order No. 933731; F.O.R. No. 2009-51**

I.    <u>MONITORING OF DITCH RESTORATION AREAS</u>

<u>Baseline Monitoring And Report</u>

1.    After completing restoration of each restoration area identified as "ditches to be restored" on Exhibit B to the Consent Order, and after installing ditch blocks in the portion of Ditch A that extends beyond wetlands into uplands as shown on Exhibit B, Respondent shall conduct baseline monitoring and prepare a baseline monitoring report. Three copies of each baseline monitoring report shall be sent to the District to the attention of Ruth Bouman at the address provided in the Consent Order. Each report is due no later than thirty (30) days after completing restoration of each restoration area. If the District has any written questions on the baseline monitoring report, Respondent shall provide a written response within thirty (30) days. Each report shall contain the following:

        (a)    Map of individual restoration area that identifies the linear monitoring transect and the nine permanent photographic stations (located at the beginning, middle, and end of transect and permanently marked with PVC pipe over rebar). Exhibit B identifies the location of the nine photographic stations.

        (b)    Photographs shall be taken at each photographic station to document the status of the restoration. The photographs shall be identified according to the (a) numbered restoration area and (b) location within that restoration area.

<u>Annual Monitoring And Report</u>

2.    Once a year for three consecutive years or until successful establishment of the restoration areas has occurred, as determined by the District, Respondent shall conduct monitoring along the linear transect of each restoration area and prepare an annual monitoring report (described in following paragraph). The annual monitoring shall be conducted in June or July. The following data shall be collected:

        (a)    Color photographs taken at the permanent photographic stations identified on the Map attached as Exhibit B to this Consent Order and identified according to the (a) restoration area and (b) location within that restoration area.



(b) Along the linear transect, Respondent shall describe and photograph any evidence of exotic/nuisance species, erosion, sedimentation, siltation, and turbidity. If any evidence is noted, Respondent shall assess the problem and describe actions taken to remedy the problem.

II. MONITORING OF ERP ROAD RESTORATION AREA

1. Respondent shall monitor the restoration area identified as "ERP Roads" for three consecutive years, on an annual basis, with a wetland monitoring report submitted annually August 1 of each year or until the District has deemed the restoration area has met success criteria as determined by the District. The first annual report is due on August 1, 2013 with subsequent reports due August 1, 2014 and August 1, 2015. The annual monitoring report shall be in conformance with District form EN-55. The reports shall also include photo documentation upstream and downstream of the restored area. Photo stations shall be established within the restored area at the locations identified on Exhibit B. Photos shall be taken annually at the established stations during the monitoring events and submitted in the annual report.

2. Respondent shall maintain the restoration area on a quarterly basis through the monitoring period so that the aerial coverage of nuisance species as defined in the Florida Exotic Pest Plant Council's 2009 List of Invasive Species (including but not limited to: Chinese tallow, cattail, primrose willow, etc.) is not greater than 10%.

3. If District staff determines that 50% or greater mortality of planted wetland species has occurred in any stratum within the restoration area, Respondent shall submit a remediation plan to the District for review and approval no later than thirty (30) days following notification by the District. Within thirty (30) days of the District's approval of the remediation plan, Respondents shall begin implementation of the plan. The success criteria as stated below or as modified by the remediation plan shall be achieved. If Respondent fails to timely submit a remediation plan or the remediation plan is unacceptable to the District, Respondent shall replant and monitor the restored area in accordance with the specifications provided by the District within thirty (30) days of notification by the District.

4. Successful establishment of the restoration area will have occurred when:

(a) At least eighty (80) percent of the planted individuals in each stratum have survived throughout the monitoring period and are showing signs of normal growth, based upon standard growth parameters such as height and base diameter, or canopy circumference; and



(b)  At least eighty (80) percent cover by appropriate wetland herbaceous
     species has been obtained; and

(c)  The wetland restoration area exhibits less than ten (10) percent coverage
     by nuisance and exotic species as defined in the Florida Exotic Pest Plant
     Council's 2009 List of Invasive Species; and

(d)  The above criteria have been achieved by the end of a three (3) year
     period following initial planting.

(e)  If District staff determines that the success criteria described above have
     not been achieved by August 31, 2015, Respondent shall submit a
     remediation plan to the District for review and approval no later than thirty
     (30) days following notification by the District. The plan shall include a
     narrative describing the type and causes of failure and contain a complete
     set of plans for the redesign and/or replacement planting of the restoration
     area so that the success criteria will be achieved. Within thirty (30) days
     of written District approval, Respondent shall begin implementation of the
     plan. The success criteria as stated above or as modified by the
     remediation plan shall be achieved. If Respondent fails to timely submit a
     remediation plan or the remediation plan is unacceptable to the District,
     Respondent shall, within thirty (30) days of notification by the District,
     replant and monitor the restoration area in accordance with the
     specifications provided by the District.

## III.  MONITORING OF ROAD RESTORATION AREAS

1.  Respondent shall monitor the restoration area identified as "Roads" for three
    consecutive years, on an annual basis, with a wetland monitoring report
    submitted annually August 1 of each year or until the District has deemed the
    restoration areas have met success criteria as determined by the District. The
    first annual report is due on August 1, 2013 with subsequent reports due August
    1, 2014 and August 1, 2015. The annual monitoring report shall be in
    conformance with District form EN-55. The reports shall also include photo
    documentation upstream and downstream of portions of the restored areas
    located in wetlands. Photo stations shall be established within the portions of the
    restored areas located in wetlands at the locations identified on Exhibit B.
    Photos shall be taken annually at the established stations during the monitoring
    events and submitted in the annual report.

2.  Respondent shall maintain the restoration areas on a quarterly basis through the
    monitoring period so that the aerial coverage of nuisance species as defined in
    the Florida Exotic Pest Plant Council's 2009 List of Invasive Species (including
    but not limited to: Chinese tallow, cattail, primrose willow, etc.) is not greater
    than 10%.



3. If District staff determines that 50% or greater mortality of planted wetland species has occurred in any stratum within the restoration areas, Respondent shall submit a remediation plan to the District for review and approval no later than thirty (30) days following notification by the District. Within thirty (30) days of the District's approval of the remediation plan, Respondents shall begin implementation of the plan. The success criteria as stated below or as modified by the remediation plan shall be achieved. If Respondent fails to timely submit a remediation plan or the remediation plan is unacceptable to the District, Respondent shall replant and monitor the restored area in accordance with the specifications provided by the District within thirty (30) days of notification by the District.

4. Successful establishment of the restoration areas will have occurred when:

   (a) At least eighty (80) percent of the planted individuals in each stratum have survived throughout the monitoring period and are showing signs of normal growth, based upon standard growth parameters such as height and base diameter, or canopy circumference; and

   (b) At least eighty (80) percent cover by appropriate wetland herbaceous species has been obtained; and

   (c) The wetland portions of the restoration areas exhibit less than ten (10) percent coverage by nuisance and exotic species as defined in the Florida Exotic Pest Plant Council's 2009 List of Invasive Species; and

   (d) The above criteria have been achieved by the end of a three (3) year period following initial planting.

   (e) If District staff determines that the success criteria described above have not been achieved by August 31, 2015, Respondent shall submit a remediation plan to the District for review and approval no later than thirty (30) days following notification by the District. The plan shall include a narrative describing the type and causes of failure and contain a complete set of plans for the redesign and/or replacement planting of the restoration areas so that the success criteria will be achieved. Within thirty (30) days of written District approval, Respondent shall begin implementation of the plan. The success criteria as stated above or as modified by the remediation plan shall be achieved. If Respondent fails to timely submit a remediation plan or the remediation plan is unacceptable to the District, Respondent shall, within thirty (30) days of notification by the District, replant and monitor the restoration areas in accordance with the specifications provided by the District.



# Exhibit D
# Burnt Island Wildfire Fireline Rehabilitation Project
## at Lochloosa Wildlife Conservation Area

The Burnt Island Wildfire at Lochloosa Wildlife Conservation Area (LWCA) was discovered on the afternoon of 21 December 2010. The Florida Division of Forestry (DOF) and the Water Management District responded immediately and began a containment effort relying on tractor / plow units to establish freshly plowed firelines to hold the fire.

The majority of the fire was located in the Right Arm Lochloosa Lake. This area, located in the southwest section of LWCA, is comprised of a wide expanse of marsh dominated with sand cordgrass and scattered shrubs atop deep, organic soils. The suppression effort concentrated on an attempt to hold the fire within the marsh. Firelines were plowed on the edge of the pine flatwoods / marsh line. In some areas, as many as seven parallel lines were plowed to hold the fire. Other lines were installed through pine flatwoods where the marsh lines did not hold. Existing firelines and roads were used where possible as the fire came out of the marsh but new lines needed to be plowed as well. The suppression efforts continued until 28 December when the fire was declared controlled and in monitoring mode by DOF. In its final configuration, the wildfire burned a total of 2,616.5 acres and has a perimeter of 17.5 miles.

## Project Description

### Rehabilitation of Plowed Lines

The goal of this project is to rehabilitate approximately 4.2 miles of firelines that were plowed and/or bladed as an emergency measure to combat the wildfire spread. The firelines vary from a single plowed line adjacent to pine plantation, trail roads lightly bladed with a small bulldozer, and numerous parallel plowed lines on the landward edge of marsh. The intent of the proposed work is to repair any ground disturbance that has potential to adversely affect the hydrology of adjacent areas. The project will also include the maintenance of previously existing firelines where they define established fire management units.

1



Equipment anticipated for use includes:

- Front end Loader
- Standard Reach Track Hoe
- Farm Tractor with Disc Harrow
- Bull Dozer

Other equipment may be suggested by others to accomplish the tasks but must be approved by District staff prior to use.

The project work will entail relocating the mineral and organic soils severed from the natural ground surfaces and placing them back in the immediately adjacent plow line and/or bladed line. The relocated material must be placed as near to the natural elevation of adjacent soil surface as possible. The material must be comprised of only that which was severed by the fire suppression activities.

The primary objective of this project is to restore natural vegetative communities, hydrologic characteristics, and prevent any future water quality impacts resulting from the suppression activities of the 2010 Burnt Island Wildfire. Restoration priority is given to areas immediately adjacent to or in wetland communities (weather and soil conditions permitting). District staff will identify priority areas and be on-site to monitor work progress. Staff will also decide if working conditions deteriorate to the point that resource damage may occur; such as rising water table or presence of surface water. In such cases, staff will direct the restoration efforts to other, less vulnerable areas.

## Fireline Maintenance / Establishment.

Some sections of old firelines have overgrown through the years and if they had been maintained, might have prevented the need to plow new lines in and near the marsh. These lost lines have value for both wildfire suppression and prescribed fire. Reestablishment/establishment of these lines will result in a bare mineral soil line located in the uplands that should replace the need to enter the wetlands for fire control. Land Management staff have located those overgrown or missing sections of line that should be reestablished. Staff will provide daily, on-site guidance during this part of the project.

2





LOCHLOOSA CONSERVATION AREA
Burnt Island Road Wildfire: Fireline Rehab
Woodstock

LEGEND

Blade Lines
WS-Plow Line
Management Area Roads
Conservation Area Boundary

1 = 32178

The St. Johns River Water Management District prepares and uses this information for its own purposes and this information may not be suitable for other purposes. The information is protected and is, further documentation of this data can be obtained by contacting the St. Johns River Water Management District. Geographic Information Systems, Program Management. P.O. Box 1429, Palatka, Florida 32178-1429. Tel: (386) 329-4176. Palatka, Florida 32178-1429. Tel: (386) 329-4176.



b.    List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

None
☒

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

c.    List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

None
☒

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
| --- | --- | --- |

**18. Nature, location and name of business**

None
☒

a.    If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or  was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity  securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
| --- | --- | --- | --- | --- |

b.    Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

None
☒

| NAME | ADDRESS |
| --- | --- |

Bankruptcy2011 ©1991-2011, New Hope Software, Inc., ver. 4.6.2-759 - 32200-302Y-02010 - Adobe PDF

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, record and financial statements**

None ☐   a.   List all bookkeepers and accountants who within the two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                    DATES SERVICES RENDERED

Linda C. Boles, Finance
Administrator
Wendell H. Wheeler, CPA

None ☒   b.   List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                          ADDRESS                    DATES SERVICES RENDERED

None ☒   c.   List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                          ADDRESS

None ☐   d.   List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the two years immediately preceding the commencement of this case by the debtor.

NAME AND ADDRESS                                    DATE
                                                                        ISSUED

Farrm Credit of Florida, ACA
TD Bank, N.A. (formerly
Mercantile Bank)
Community State Bank

---

**20. Inventories**

None a.    List the dates of the last two inventories taken of your property, the name of the person who supervised the
☒    taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY        INVENTORY SUPERVISOR        DOLLAR AMOUNT OF INVENTORY
(Specify cost, market or other basis)

---

None b.    List the name and address of the person having possession of the records of each of the two inventories
☒    reported in a., above.

DATE OF INVENTORY        NAME AND ADDRESSES OF CUSTODIAN OF
INVENTORY RECORDS

---

**21. Current Partners, Officers, Directors and Shareholders**

None a.    If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.
☒

NAME AND ADDRESS        NATURE OF INTEREST        PERCENTAGE OF INTEREST

---

None b.    If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who
☐    directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| Avery C. Roberts<br>Post Office Box 233<br>Lake Butler, Florida 32054 | Shareholder | 100% of issued and outstanding stock |
| Avery C. Roberts<br>Post Office Box 233<br>Lake Butler, Florida 32054 | President | |
| Avery C. Roberts<br>Post Office Box 233<br>Lake Butler, Florida 32054 | Director | |
| Linda C. Boles<br>Post Office Box 233<br>Lake Butler, Florida 32054 | Secretary | |

**22. Former partners, officers, directors and shareholders**

None  a.   If the debtor is a partnership, list each member who withdrew from the partnership within one year
☒       immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|------|---------|--------------------|

None  b.   If the debtor is a corporation, list all officers, or directors whose relationship with the corporation
☒       terminated within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|------------------|-------|---------------------|

**23. Withdrawals from a partnership or distribution by a corporation**

None    If the debtor is a partnership or a corporation, list all withdrawals or distributions credited or given to an
☐       insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other
        perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|------|------|------|
| Avery C. Roberts<br>Post Office Box 233<br>Lake Butler, Florida 32054<br>Relationship: President, Director and Sole Shareholder | | Avery C. Roberts receives no salary from the Debtor but has loaned monies to the Debtor and been re-paid as monies are available. |

**24. Tax Consolidation Group**

None    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent
☒       corporation of any consolidated group for tax purposes of which the debtor has been a member at any time
        within the six-year period immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|----------------------------|--------------------------------------|

**25.    Pension Funds**

None       If the debtor is not an individual, list the name and federal taxpayer identification number of any pension
⊠        fund to which the debtor, as an employer, has been responsible for contributing at any time within the six-year
          period immediately preceding the commencement of the case.

NAME OF PENSION FUND                          TAXPAYER IDENTIFICATION NUMBER (EIN)

\* \* \* \* \* \*

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any
attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date    May 25, 2011                          Signature    /s/ Avery C. Roberts

                                                           AVERY C. ROBERTS,
                                                           President

                                                           Print Name and Title

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

_____0_____ continuation sheets attached

***Penalty for making a false statement:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §152 and 3571***

---

**DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for
compensation and have provided the debtor with a copy of this document and the notices and required under 11U.S.C. §§ 110(b), 110(h), and 342(b);
(3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110 setting a maximum fee for services chargeable by bankruptcy petition
preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the
debtor, as required in that section.

_____        _____
Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer        Social Security No. (Required by 11 U.S.C. § 110(c).)

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or
partner who signs this document.*

_____

_____
Address

X_____        _____
Signature of Bankruptcy Petition Preparer                              Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is
not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.