UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

ROBERTS LAND & TIMBER
INVESTMENT CORP.,

        Debtor,

and

UNION LAND & TIMBER CORP,

        Chapter 11 Debtors.

Case No. 3:11-bk-03851-PMG
and Case No. 3:11-bk-03853-PMG


Jointly Administered Under
Case No. 3:11-bk-03851-PMG

_____

## **DEBTORS' DISCLOSURE STATEMENT**


THE DECKER LAW FIRM, P. A.


Andrew J. Decker, III
Florida Bar No. 267211
320 White Avenue - Street Address
Post Office Drawer 1288 - Mailing Address
Live Oak, Florida 32064
Telephone:        (386) 364-4440
Telecopier:        (386) 364-4508
Email[AJD,III]:    decklaw@windstream.net

Counsel for the Debtor and Plan Proponent, Roberts
Land & Timber Investment Corp.


Dated: June 7, 2011.

1

# I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 Case of Roberts Land & Timber Investment Corp. and Union Land & Timber Corp. (collectively the "Debtor" or "Debtors").  This Disclosure Statement contains information about the  Debtor and describes the Plan of Reorganization (the "Plan") filed by Roberts Land & Timber Investment Corp. and Union Land & Timber Corp.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed in this Disclosure Statement. [General unsecured creditors are classified in Class 7, and will receive a distribution of 100% of their allowed claims.

## A.    Purpose of This Document

This Disclosure Statement describes:

1.    The Debtor and significant events prior to and during this bankruptcy case,

2.    How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

3.    Who can vote on or object to the Plan,

4.    What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

5.    Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

6.    The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be held before a United States Bankruptcy Judge on the Fourth Floor at the United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202  By separate notice, you will receive a time and date of the hearing to confirm the Plan.

2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the United States Bankruptcy Court, 300 North Hogan Street, 3rd Floor, Jacksonville, Florida 32202. See below for a discussion of voting eligibility requirements.

3.    *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon all interested parties by the date states on the enclosed order.

4.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Andrew J. Decker, III, 320 White Avenue, Post Office Drawer 1288, Live Oak, Florida 32064.

**II.     BACKGROUND**

**A.     Description and History of the Debtor's Business**

The Debtors are real estate holding and development companies as well as holder of private mortgages.  The Debtors receive income from the sale and development of real estate, management of real estate developments, mortgage receivables, cattle grazing leases and hunting leases.  The Debtors have successfully been in the real estate holding and development business since July 1993 (Roberts) and April 1999 (Union)  respectively, and up until the unexpected collapse of the real estate market have developed and sold numerous real estate projects and parcels.  Just since 2000, Debtors have had gross receipts or sales totaling over $14,453,919.00.

The Debtors are companies wholly owned by their sole shareholder Avery C. Roberts, who operate in close coordination with other real estate related companies with which Mr. Roberts is associated: Osceola Land & Timber Corp., Design Timber II, LLC, Limestone Materials, LLC, 4-Florida Developers, LLC and Rolling Meadows Investments, LLC.

The following provides a 10-year summary of gross income received from the operations of these two Debtors:

<u>Roberts Land & Timber Investment Corp.</u>

| <u>Year</u> | <u>Gross Income</u> |
|------|--------------|
| 2000 | $   969,014.00 |
| 2001 | $   351,327.00 |
| 2002 | $   790,919.00 |

| | |
|---|---|
| 2003 | $ 1,562,410.00 |
| 2004 | $ 2,076,465.00 |
| 2005 | $ 1,632,016.00 |
| 2006 | $    497,498.00 |
| 2007 | $ 2,454,692.00 |
| 2008 | $    889,611.00 |
| 2009 | $ 1,551,685.00 |
| 2010 | $      60,432.00 |

Union Land & Timber Corp.

| Year | Gross Income |
|---|---|
| 2000 | $         00.00 |
| 2001 | $   614,601.00 |
| 2002 | $   423,265.00 |
| 2003 | $   417,649.00 |
| 2004 | $     96,471.00 |
| 2005 | $     12,624.00 |
| 2006 | $     18,248.00 |
| 2007 | $         00.00 |
| 2008 | $         00.00 |
| 2009 | $     34,992.00 |
| 2010 | $         00.00 |

**B.      Insiders of the Debtor**

The Debtor, Roberts Land & Timber Investment Corp. is managed by a Board of Directors consisting of one director, Avery C. Roberts, who also holds 100% of the issued and outstanding common stock of the Debtor.  The executive officers of Roberts Land & Timber Investment Corp. are Avery C. Roberts who serves as President and Linda C. Boles who serves as Secretary of the Debtor corporation.

The Debtor, Union Land & Timber Corp. is managed by a Board of Directors consisting of two directors, Avery C. Roberts, who also holds 100% of the issued and outstanding common stock of the Debtor and Linda C. Boles, who does not hold any issued or outstanding common stock of the

5

Debtor. The executive officers of Union Land & Timber Corp. are Avery C. Roberts who serves as President and Denise C. Howard who serves as Secretary of the Debtor corporation

**C.      Management of the Debtor Before and During the Bankruptcy.**

The Debtor continues to be managed by its Board of Directors comprised of one common director, Avery C. Roberts, who owns 100% of both Debtor corporations' common stock. As President, Avery C. Roberts serves as the chief executive officer of the Debtor corporations.

**D.      Events Leading to Chapter 11 Filing.**

Since 2007, the national economy has been in a severe recession brought on by a collapse in the residential housing and secondary mortgage market. Home values have declined by percentages exceeding those last observed in our country during the Great Depression of the 1930's. With the downturn in the housing market and recession, the North Florida real estate market has also experienced a sharp drop-off in demand and price. As companies whose business model is based on real estate acquisition, development and sale, Roberts and Union have faced daunting challenges in order to continue to service its obligations, weather this financial and economic storm and through controlled and intelligent planning sell selected holdings and retire indebtedness.

Roberts and Union have understood that the reasonable loan servicing expectations of their creditors must be addressed while doing so in a way that will not deplete company assets through "fire sales" that will not effectively retire indebtedness and could, in fact, further impair and drive down the real estate market in our North Florida area. The Debtors believe that prior to the filing of these Chapter 11 Cases they prudently walked that fine line as they intelligently marketed and sold assets and retired debt.

The following summary shows the approximate reduction over the past three years in the Note obligations owed to one of the major creditors in these Chapter 11 Cases, Farm Credit of Florida, ACA, by Roberts Land & Timber Investment Corp. and other companies owned by or associated with Avery C. Roberts since the onset of the real estate crisis:

| Farm Credit Note Reductions: 2008 through 2011 | | | | |
|---|---|---|---|---|
| Borrower | 2008 | 2009 | 2010 | Projected 2011 |
| Avery C. Roberts & Roberts Land & Timber Investment Corp. | $ 363,876.00 | $ 60,355.00 | - - | - - |
| Osceola Land & Timber Corp. | $ 114,950.00 | $ 384,885.00 | $ 1,284,188.00 | $ 100,000.00 |
| Design Timber II, LLC | $1,182,513.00 | $ 391,211.00 | $ 625,345.00 | $ 1,850,000.00 |
| Design Timber II, LLC (New Loan) | - - | $ 95,440.00 | $ 103,708.00 | $ 200,000.00 |
| Limestone Materials, LLC | $ 269,151.00 | $ 419,151.00 | $ 1,860,632.00 | - - |
| 4-Florida Developers, LLC | $ 304,133.00 | $ 76,033.00 | - - | - - |
| Rolling Meadows Investments, LLC | - - | - - | - - | $ 2,100,000.00 |
| Total | $ 2,234,623.00 | $ 1,427,185.00 | $3,873,873.00 | $ 4,250,000.00 |
| Approximate Total Debt Reduction 2008 - 2011 (Projected) - - $11,785,681.00 | | | | |

In addition to sales and loan servicing, Roberts and its principal, Avery C. Roberts had also implemented a process of selective conveyances through negotiated agreements with creditors such as Mercantile Bank (now known as TD Bank, N.A.).     In addition, the Debtors had successfully negotiated interest rate reductions on loans and/or interest only payment schedules while working on real estate sales and anticipating a recovery in the real estate market.

Virtually all of the Debtors' creditors have worked collaboratively with Roberts and Union to work through the financial and real estate challenges except for Farm Credit of Florida, ACA, as agent/nominee for Florida Federal Land Bank, FLCA, successor by merger to Farm Credit of North Florida, as agent/nominee for Farm Credit of North Florida, ACA ("Farm Credit").

The Debtor has suffered from the financing structure with Farm Credit of Florida, ACA and from the downturn of the economy. Notwithstanding the substantial Note reductions referenced above and the Debtors' attempts to structure interest only payments until certain real estate developments come to fruition at which time Farm Credit could be paid in full, shortly before the Debtors filed these Chapter 11 Cases, Farm Credit demanded the immediate payment of $11,300,819.22. Although the Debtors had made numerous attempts and loan restructuring proposals to Farm Credit since the early on-set of the real estate and economic crisis, Farm Credit has been unwilling to cooperate or willing try to reach any type of mutually favorable loan restructuring so that Debtors could continue to service its debts owed to Farm Credit as well as other creditors during this time of economic recession. The Debtors had diligently worked to try to negotiate loan-restructuring terms with Farm Credit to allow it to continue to meet its loan payments to Farm Credit through these tough economic times but has only been meet with resistance. Even though Farm Credit has not been cooperative or willing to restructure the Debtors loans, Debtors had continued to keep Farm Credit apprised of all of its efforts to reduce its debt to Farm Credit as well as to keep them informed of its financial status and hardships. The Debtors had been successful in restructuring some of its others existing loans and obligations with various creditors in order to produce additional cash flow however those efforts alone are not enough to maintain all of its obligations until both Debtor and the real estate market can start to recover. Even though, the

Debtors have worked and continue to work diligently to reduce their debt and pay their obligations, the current economic recession and associated collapse of the real estate market, along with the inability to be able to restructure the debt owed to Farm Credit, have been extremely challenging for the Debtors. The current economic conditions has caused a tremendous downturn in business, consumer spending, including the disruption in the debt and capital markets, and the ability to market and/or sell real estate all which have adversely impacted and impaired the Debtors' business operations and its ability to service its existing debts. The Debtors do anticipate that the real estate market and associated industries will recover in time and with the operational and financial restructuring available under the Chapter 11 Bankruptcy protection, the Debtors feel that they will be able to recover from the downturn in the real estate market once the economy stabilizes.

**E.      Significant Events During the Bankruptcy Case**

This case was filed May 25, 2011, approximately two weeks ago. There have been no significant events since the filing of this case other than an adversary proceeding filed by the Debtor against Farm Credit of Florida, ACA, to extend the stay or impose injunctive relief on behalf of Avery C. Roberts and Twyla C. Roberts.

The Debtors have filed their proposed Jointly Administered Chapter 11 Plan of Reorganization.[1]

**F.      Projected Recovery of Avoidable Transfers**

---

[1]The Court has scheduled a hearing for July 6, 2011, at 9:30 a.m. on the Debtors' Motion for Joint Administration of these Chapter 11 Cases.

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. To the Debtor's best knowledge, no avoidable transfers have occurred that could be the subject of any recovery action.

**G.     Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

**III.     SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.     What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.     Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1.     *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The Debtor has no administrative expenses.

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency would ordinarily be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured pre-petition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
| --- | --- | --- | --- | --- |

| | | | | |
|---|---|---|---|---|
| 1 | Tax Claim IRS | No | N/A | Payment in full over 6 years. [No claims have been filed; none are anticipated.] |
| 1 | Tax Claim State of Florida Department of Revenue | No | N/A | Payment in full over 6 years. [No claims have been filed; none are anticipated.] |
| 3(a) | TD Bank First Mortgage | No | Yes | Amount of secured claim, $199,042.68, paid in monthly installments at 5.00% over 20 years with balloon at 6 years. |
| 3(b) | TD Bank Second Mortgage | No | Yes | Amount of undersecured claim, $370,957.32, paid in monthly installments at 5.00% over 20 years with balloon at 6 years. |
| 4 | Farm Credit of Florida, ACA | No | Yes | Debtor will surrender 1483 acres, more or less, in Baker County, Florida, referred to as Woodstock Industrial Site in satisfaction, release and discharge of debt to creditor. |
| 5(a) | Community State Bank | No | Yes | Amount of secured claim $162,419.49, paid in monthly installments at 5.00% over 20 years with balloon at 6 years. |
| 5(b) | Community State Bank | No | Yes | Amount of secured claim $645,000.00, |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| | | | | paid in monthly installments at 5.25% over 20 years with balloon at 6 years. |
| 6(a) | Tamco Capital Corporation | No | Yes | Amount of secured , claim $5,000.00, paid in monthly installments at 5.00% over 5 years. |
| 7 | Unsecured Claims | No | Yes | Amount of unsecured claims to be paid in full over 10 years without interest in equal monthly installments. |

3.      *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The Plan proposed to pay these claims in full on a monthly basis:

| **Class #** | **Description** | **Insider?** | **Impairment** | **Treatment** |
|---|---|---|---|---|
| 7 | Unsecured Claims | No | Yes | Amount of unsecured claims to be paid in full over 10 years without interest in equal monthly installments. |

4.      *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the

Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In

a partnership, equity interest holders include both general and limited partners. In a limited liability

company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual

who is a debtor, the Debtor is the equity interest holder. The sole Equity Interest Holder is Avery C. Roberts who owns and holds 1,000 shares of common stock which represents all of the issued and outstanding shares of stock or equity interest in the Debtor corporations.

### D.      Means of Implementing the Plan

1.   *Source of Payments*

The Debtors will fund the payments under the Plan from income received from mortgage and notes receivable held by the Debtors, income from the sale and development of real estate and from management income. The following projected financial data shows the amounts and sources of such income for the Debtors, Roberts Land & Timber Investment Corp. and Union Land & Timber Corp.:

Projected Income and Expenses
(Six-Year Budget Plan - May 25, 2011 through December 31, 2017)

| Expenses | 2011 | 2012 | 2013 | 2014 | 2015 | 2015 | 2017 |
|---|---|---|---|---|---|---|---|
| | | | Operational Expenses | | | | |
| Survey & Other | 757 | 1299 | 1299 | 1299 | 1299 | 1299 | 1299 |
| Repossession Cost | 3300 | 0 | 0 | 0 | 0 | 0 | 0 |
| Commission | 4296 | 7365 | 7365 | 7365 | 7365 | 7365 | 7365 |
| Advertising | 3317 | 6635 | 6635 | 6635 | 6635 | 6635 | 6635 |
| Dues & Donations | 371 | 637 | 637 | 637 | 637 | 637 | 637 |
| Insurance | 1242 | 2129 | 2129 | 2129 | 2129 | 2129 | 2129 |
| Office Expenses | 9315 | 18630 | 18630 | 18630 | 18630 | 18630 | 18630 |
| Office Cleaning | 900 | 2160 | 2160 | 2160 | 2160 | 2160 | 2160 |
| Office Lawn Care | 1750 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 |
| Equipment Lease | 1604 | 0 | 0 | 0 | 0 | 0 | 0 |
| Repairs & Maintenance | 1448 | 2483 | 2483 | 2483 | 2483 | 2483 | 2483 |
| Supplies | 3008 | 6015 | 6015 | 6015 | 6015 | 6015 | 6015 |
| Property Taxes | 18637 | 18637 | 18637 | 18637 | 18637 | 18637 | 18637 |
| Telephone & Internet | 6105 | 10466 | 10466 | 10466 | 10466 | 10466 | 10466 |
| Utilities | 3305 | 5666 | 5666 | 5666 | 5666 | 5666 | 5666 |
| | | Chapter 11 Plan Payments for Jointly Administered Cases | | | | | |
| Mercantile TD Bank Payment | 26332 | 45141 | 45141 | 45141 | 45141 | 45141 | 45141 |
| Community State Payment | 37931 | 65024 | 65024 | 65024 | 65024 | 65024 | 65024 |
| Tamco phone system | 660 | 1132 | 1132 | 1132 | 1132 | 1132 | 1132 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Unsecured Creditors | 7749 | 13283 | 13283 | 13283 | 13283 | 13283 | 13283 |
| Chapter 11 Fees | 1950 | 1300 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | |
| Total Expenses | | 133977 | 211002 | 209702 | 209702 | 209702 | 209702 | 209702 |

Income

| Sources | 2011 | 2012 | 2013 | 2014 | 2015 | 2015 | 2017 |
|---|---|---|---|---|---|---|---|
| Mortgage Rec | 58885 | 100944 | 99116 | 92229 | 92229 | 92229 | 90651 |
| Hunt Leases | 17262 | 22062 | 22062 | 22062 | 22062 | 22062 | 22062 |
| Cattle Grazing fees | 13111 | 22476 | 22476 | 22476 | 22476 | 22476 | 22476 |
| Office Space (Swift Creek Realty) | 4200 | 7200 | 7200 | 7200 | 7200 | 7200 | 7200 |
| Pine Straw | 32500 | 65000 | 65000 | 65000 | 65000 | 65000 | 65000 |
| Rent - 100A | 2800 | 5200 | 5200 | 5200 | 5200 | 5200 | 5200 |
| Sign Rent I-10 | 0 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 |
| Facilities Exchange (office reimb) | 6336 | 10860 | 10860 | 10860 | 10860 | 10860 | 10860 |
| Total Income | | 135094 | 234942 | 233114 | 226227 | 226227 | 226227 | 224649 |

The foregoing demonstrates that the Debtors will be capable of servicing the obligations to Community State Bank, TD Bank, N.A. and Tamco Capital Corporation.

In addition, in the past three years, the Debtors' principal, Avery C. Roberts, whose personal financial resources and non-debtor business enterprises assist and can supplement the sources and amounts of payments for Plan payment purposes, has substantially reduced the various capital contributions he is personally required to make on various investments and companies, from $136,171.00 per month to a projected amount of $28,288.00 per month once a pending transaction is closed by Mr. Roberts - - all in a good faith efforts to try to assist the Debtors in meeting their current debt obligations to their creditors.

2. *Conveyance of Real Property to Farm Credit*.

The real property described as the Woodstock Industrial Site consisting of 1,483 acres, more or less, in Baker County, Florida, lying adjacent to U.S. I-10 and U.S. 90, will, within 30 days of the

Effective Date, be conveyed to Farm Credit of Florida, ACA, by a Special Warranty Deed in recordable form.

The Debtors are obligated to Farm Credit of Florida, ACA in the total amount of $11,300,819.22 as of the date of filing. An Appraisal Report performed by Cantrell Real Estate, Inc. dated April 7, 2011, established the fair market value of the 1,483 acre Woodstock Industrial Site at $17,900,000.00. A copy of this Appraisal Report was furnished to this creditor before the filing of this Chapter 11 Case.

At the confirmation hearing, the Debtors will establish that the conveyance by Warranty Deed of the fee simple interest in said property owned by Roberts Land & Timber Investment Corp. provides Farm Credit of Florida, ACA with the indubitable equivalent of its total claim in these Chapter 11 Cases

3.      *Post-confirmation Management*

The corporations will continue to be managed by their President, sole shareholder and chief executive officer, Avery C. Roberts.

**E.      Risk Factors**

The Debtor believes that there may be risk factors affecting the feasibility of the Plan but that these factors are limited. First, the claims in this case are all fully collateralized except for the claims of Tamco Capital Corporation and TD Bank, N.A. The unsecured creditors will be paid in full under the Plan. Even if the Debtor should default, whether in a Chapter 7 Case or in the event of dismissal there is sufficient property owned by the Debtor to fully satisfy and discharge the unsecured creditors.

**F.      Executory Contracts and Unexpired Leases**

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

The Debtor is not aware of any executory contracts or unexpired leases. Any and all such executory contracts or unexpired leases are rejected. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**G.     Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan:

The Debtor anticipates that there will be <u>no</u> adverse tax consequences from this reorganization.

**IV.     CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one

impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.      Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1.      *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest

cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to

Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

    2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

    3.    *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

    a.    holders of claims and equity interests that have been disallowed by an order of the Court;

    b.    holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

    c.    holders of claims or equity interests in unimpaired classes;

    d.    holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

    e.    holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

    f.    administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    **B.**    **Votes Necessary to Confirm the Plan\**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

    1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

    2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code

allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. In the event of a Chapter 7 filing, the unsecured creditors would likely receive no distribution since all of the Debtor's property is subject to a lien or would be exempt under the law. In any event, the Debtor's Plan provides for 100% payment to the unsecured creditors and therefore no liquidation analysis is necessary.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

At the confirmation hearing, the Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

## V.      EFFECT OF CONFIRMATION OF PLAN

### A.      DISCHARGE OF DEBTOR

Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. Unless otherwise specifically noted in the Debtors' Chapter 11 Plan, the entry of an Order of Discharge in these Chapter 11 Cases shall not be deemed to effect a discharge, release or satisfaction of the liability owed by Avery C. Roberts with respect to any claim provided for in the Plan, except Farm Credit of Florida, ACA.

### B.      Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount

of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI.    OTHER PLAN PROVISIONS

There are no additional Plan provisions.

Roberts Land & Timber Investment Corp.

By_____
Avery C. Roberts
President

Union Land & Timber Corp.

By_____
Avery C. Roberts
President

THE DECKER LAW FIRM, P. A.


BY          */s/ Andrew J. Decker, III*
Andrew J. Decker, III, Esquire
Florida Bar No. 267211
320 White Avenue - Street Address
Post Office Drawer 1288 - Mailing Address
Live Oak, Florida 32064
Telephone:           (386) 364-4440
Telecopier:          (386) 364-4508
Email[AJD,III]:     decklaw@windstream.net
Attorneys for Debtors

Roberts Land & Timber Investment Corp. .and Union Land & Timber Corp.

09225

24