# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ROBERTS LAND & TIMBER | ) | Case No. 3:11-bk-03851-PMG |
| INVESTMENT CORP., <u>ET AL</u>. | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## OR, ALTERNATIVELY, TO DISMISS THE CASES

**COMES NOW**, Farm Credit of Florida, ACA ("Farm Credit"), and files this Motion for Relief from the Automatic Stay or, alternatively, to Dismiss the above-captioned chapter 11 cases (the "Motion"), and respectfully shows the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334(b).

2. The Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O) and a contested matter under Fed. R. Bankr. P. 9014.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105, 362 and 1112(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. as amended (the "Bankruptcy Code").

### BACKGROUND

5. On May 25, 2011 (the "Petition Date"), Roberts Land & Timber Investment Corp. ("Roberts Land") and Union Land & Timber Corp. ("Union Land" collectively with Roberts Land, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of the

Bankruptcy Code. Each Debtor continues in possession of its property and is operating its business pursuant to §§ 1107 and 1108 of the Bankuptcy Code.

6. On July 6, 2011, this Court entered its Order Directing Joint Administration of Cases, consolidating the Debtors' bankruptcy cases for procedural purposes only.

7. Farm Credit is the largest creditor in each bankruptcy case and is owed approximately $11,400,000 secured by first mortgages on real property comprising approximately 5,400 acres located in Columbia, Union and Baker Counties. Union Land owns approximately 515 acres of the Real Property in Union and Columbia Counties and Roberts Land owns the remainder of the Real Property.

8. Union Land's schedules indicate that Union Land has only one other non-insider creditor, Community State Bank, which purportedly holds a fully secured claim in the amount of $645,000 secured by 155 acres of land in St. Johns County, Florida. In addition to the Real Property and the Community State Bank collateral, Union Land has 186 acres of land in Lafayette County, Florida valued by the Debtors at $279,000.

9. Roberts Land's schedules lists two additional non-insider creditors other than Farm Credit and Community State Bank and no unencumbered assets.

10. The Real Property produces little or no income for the Debtors and is held for investment purposes.

11. The Debtors filed a joint plan of reorganization on June 7, 2011 (the "<u>Plan</u>"). The Plan is a partial "dirt for debt" plan seeking to force Farm Credit to receive the portion of the Real Property located in Baker County in *full* satisfaction of its claims (the "<u>Woodstock Site</u>") with the Debtors retaining all of the remaining Real Property. The Woodstock Site comprises less than a third of the Real Property, has an appraised value of only $4,450,000 and is not

2

collateral for one of the four notes owed to Farm Credit. The Plan is not confirmable and is a sign of desperation since neither Debtor generates sufficient income to service even a portion of the Farm Credit debt.

## DESCRIPTION OF LOAN OBLIGATIONS

12. On or about January 10, 2006, Farm Credit agreed to lend Roberts Land the principal sum of $5,000,000.00. In consideration for and to evidence such loan, Roberts Land executed and delivered a Variable Rate Note dated January 10, 2006, in the principal amount of $5,000,000.00 to Farm Credit (as amended from time to time by the parties, the "$5,000,000 Note"). A true and correct copy of the $5,000,000 Note is attached hereto as Exhibit "A".

13. As of the Petition Date, the entire principal balance of the $5,000,000 Note in the amount of $4,291,666.78, late charges in the amount of $65,325.61 and accrued interest of $123,047.36 was due and payable under the $5,000,000 Note. In addition, all attorneys' fees and costs incurred by Farm Credit in connection with the collection of the outstanding indebtedness are also due under the $5,000,000 Note.

14. As security for repayment of the debt evidenced by the $5,000,000 Note, Roberts Land, Union Land, Avery Roberts and Twyla Roberts executed and delivered a Mortgage dated January 10, 2006 in favor of Farm Credit encumbering certain real and personal property described therein, and which was recorded in the Official Public Records of Union County, Florida at Official Records Book 226, Page 547 (the "Union County Property"). A true and correct copy of the referenced Mortgage is attached hereto as Exhibit "D".

15. On or about January 10, 2006, Farm Credit agreed to lend Roberts Land the principal sum of $2,000,000.00. In consideration for and to evidence such loan, Roberts Land executed and delivered a Revolving Variable Rate Note dated January 10, 2006, in the principal

3

amount of $2,000,000.00 to Farm Credit (the "Initial $2,000,000 Note"), which was renewed pursuant to a Revolving Variable Rate Renewal Note dated January 13, 2009 in the principal amount of $2,000,000.00, which was executed and delivered by Roberts Land to Farm Credit (as further amended from time to time by the parties, the "$2,000,000 Note"). True and correct copies of the Initial $2,000,000 Note and the $2,000,000 Note are attached hereto as Exhibits "B" and "C" respectively.

16. As of the Petition Date, the entire principal balance of the $2,000,000 Note in the amount of $2,000,000.00, late charges in the amount of $30,642.70, and accrued interest of $69,397.23 was due and payable under the $2,000,000 Note. In addition, all attorneys' fees and costs incurred by Farm Credit in connection with the collection of the outstanding indebtedness are also due under the $2,000,000 Note.

17. On or about September 6, 2006, Farm Credit agreed to lend Roberts Land the principal sum of $4,700,000.00. In consideration for and to evidence such loan, Roberts Land executed and delivered a Fixed Rate Note dated September 6, 2006, in the principal amount of $4,700,000.00 to Farm Credit (the "$4,700,000 Note"). A true and correct copy of the $4,700,000 Note is attached hereto as Exhibit "E".

18. As of the Petition Date, the entire principal balance of the $4,700,000 Note in the amount of $4,419,449.12, late charges in the amount of $12,017.40, and accrued interest of $427,499.30 was due and payable under the $4,700,000 Note. In addition, all attorneys' fees and costs incurred by Farm Credit in connection with the collection of the outstanding indebtedness are also due under the $4,700,000 Note.

19. As security for repayment of the debt evidenced by the $4,700,000 Note and $2,000,000 Note, Roberts Land, Union Land, Avery Roberts and Twyla Roberts executed and

delivered a Mortgage dated September 6, 2006 in favor of Farm Credit encumbering certain real and personal property described therein (the "Baker County Property" or "Woodstock Site"), and which was recorded in the Official Public Records of Union County, Florida at Official Records Book 237, Page 156 (a true and correct copy of which is attached hereto as Exhibit "F"), and which was recorded in the Official Public Records of Baker County, Florida as Instrument Number 200600007454 (a true and correct copy of which is attached hereto as Exhibit "G").

20. On or about December 29, 2008, Farm Credit agreed to lend Roberts Land the principal sum of $460,000.00. In consideration for and to evidence such loan, Roberts Land executed and delivered a Nonrevolving Variable Rate Note For Advance dated December 29, 2008 in the principal amount of $460,000.00 to Farm Credit (the "$460,000 Note"). A true and correct copy of the $460,000 Note is attached hereto as Exhibit "H".

21. As of the Petition Date, the entire principal balance of the $460,000 Note in the amount of $460,000.00, late charges in the amount of $7,047.80, and accrued interest of $15,961.36 was due and payable under the $460,000 Note. In addition, all attorneys' fees and costs incurred by Farm Credit in connection with the collection of the outstanding indebtedness are also due under the $460,000 Note.

22. As security for repayment of the debt evidenced by the $460,000 Note, Roberts Land, Union Land, Avery Roberts and Twyla Roberts executed and delivered a Mortgage Modification And Spreading Agreement And Notice Of Future Advance dated December 29, 2008 in favor of Farm Credit encumbering certain real and personal property described therein, which was recorded in the Official Public Records of Baker County, Florida as Instrument Number 200900000474 (a true and correct copy of which is attached hereto as Exhibit "I"), and which was recorded in the Official Public Records of Columbia County, Florida at Official

5

Records Book 1166, Page 372 (a true and correct copy of which is attached hereto as Exhibit "J") (the "Columbia County Property", together with the Union County Property and Baker County Property, the "Real Property"), and which was recorded in the Official Public Records of Union County, Florida at Official Records Book 270, Page 296 (a true and correct copy of which is attached hereto as Exhibit "K"). The mortgage documents described above and attached as Exhibits "D", "F", "G", "I", "J" and "K" are collectively referred to hereinafter as the "Mortgage Documents".

23. The Mortgage Documents are in default by virtue of, among other things, Roberts Land's defaults under the $5,000,000 Note, $2,000,000 Note, $4,700,000 Note and $460,000 Note (collectively referred to hereinafter as the "Notes"), as alleged above. The Notes, Mortgage Documents and all documents related thereto are hereinafter referred to as the "Loan Documents."

24. The following chart summarizes the Debtors' obligations and generally describes the collateral held by Farm Credit:

| Loan Number and Original Principal Amount | Amount Owed on Petition Date | Collateral Description |
|---|---|---|
| 767194-03<br>$5,000,000.00 | $4,480,039.75 | 1st Mortgage on 3,776 acres in Union County, Florida |
| 496711-01<br>$4,700,000.00 | $4,858,965.82 | 1st Mortgage on Woodstock Site in Baker County, Florida<br><br>2nd Mortgage on Union County tract<br><br>1st Mortgage on 96 acres in Columbia County Florida |
| 767194-01<br>$2,000,000.00 | $2,100,039.93 | 2nd Mortgage on Woodstock Site in Baker County, Florida<br><br>3rd Mortgage on Union County tract |

|  |  | 2nd Mortgage on Columbia County tract |
|---|---|---|
| <u>767194-02</u><br>$460,000.00 | $483,009.16 | 2nd Mortgage on Woodstock Site in Baker County, Florida |
|  |  | 3rd Mortgage on Union County tract |
|  |  | 2nd Mortgage on Columbia County tract |

## RELIEF REQUESTED

25. By this Motion, Farm Credit seeks the entry of an order granting relief from the automatic stay under 362(d)(1) or 362(d)(2) to allow Farm Credit to proceed to exercise all of its rights and remedies to enforce its security interests in the Real Property under both state law and the Loan Documents.

26. In the alternative, Farm Credit seeks the entry of an order dismissing the above-captioned chapter 11 cases.

## GROUNDS FOR RELIEF

**A. "Cause" exists for the Court should grant Farm Credit relief from the automatic stay.**

27. Bankruptcy courts may grant relief from the stay in a debtor's chapter 11 case for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code. 11 U.S.C. § 362(d)(1). The party seeking relief pursuant to section 362(d)(1) bears the initial burden of producing evidence of cause, whereupon the burden then shifts to the debtor to prove that relief from the stay is not warranted. *Joyner Auto World v. George* (*In re George*), 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004); *Builders Insurance Group, Inc. v. R.J. Groover Construction, LLC, et al.* (*In re R.J. Groover Construction, LLC*), 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008); *In re Cobblestone Associates*, 141 B.R. 245, 247 (Bankr. M.D. Fla. 1992).

### i. The Debtors' bad-faith constitutes "cause" to lift the automatic stay.

28. Most courts have held that relief from the stay may be granted as a result of bad faith. *Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc.* (*In re Dixie Broadcasting, Inc.*), 871 F.2d 1023, 1026 (11th Cir. 1989); *Cobblestone*, 141 B.R. at 247.

29. In the Eleventh Circuit, relief from stay may be granted for cause as a result of bad faith in the filing of the bankruptcy petition if sufficient factors are present to show "'intent to abuse the judicial process and the purposes of the reorganization provisions.'" *Barclays*, 871 F.2d at 1027 (citing *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987)).

30. The Middle District of Florida has recognized that the filing of a petition in bad faith constitutes cause for lifting the stay pursuant to 11 U.S.C. § 362(d)(1). *Cobblestone*, 141 B.R. at 248. Factors in determining such bad faith filing include "(1) the debtor has one asset which is encumbered by the lien of the secured creditor; (2) there are no employees except for the principals; (3) there is little, if any, cash flow and no available sources of income to make adequate protection payments; (4) there are only a few unsecured creditors whose claims are relatively small; (5) the property has been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending the foreclosure; (6) bankruptcy offers the only means of forestalling the loss of the debtor's property; (7) there are sometimes allegations of wrongdoings by the debtor or its principals; and (8) the 'new debtor syndrome' exists where a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors." *Id.* (citing *In the Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

31. The Middle District of Florida has condensed the foregoing factors with regard to determining whether a petition was filed in bad faith into three categories: "(1) [w]hether the

debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the Congressional intent and protection afforded by Chapter 11; (2) [w]hether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and (3) [w]hether the debtor has a realistic probability of successful reorganization." *Cobblestone*, 141 B.R. at 248. The presence of most of the factors constituting bad faith will lead to a finding that a petition was filed in bad faith and that, therefore, the stay should be lifted. *Id*. In *Cobblestone*, the court held that the bankruptcy petition was filed in bad faith, because nearly all of the debtor's unsecured debt was owed to insiders or companies owned by insiders, the bankruptcy case was filed to deter foreclosure on the property, and there was no realistic possibility of reorganization. *Id*. at 248-49.

32. Although the *Cobblestone* ruling was called into question by *In re Jacksonville Riverfront Development, Ltd.*, 215 B.R. 239 (Bankr. M.D. Fla. 1997), which held that the line of cases including *Cobblestone* had been overruled by the Bankruptcy Reform Act of 1994, *Id.* at 243, the Eleventh Circuit Court of Appeals has since conclusively ruled that the reasoning set forth in *Cobblestone* has not been overruled by the Bankruptcy Reform Act of 1994. *State Street Houses, Inc. v. New York State Urban Development Corp., et al.* (*In re State Street Houses, Inc.*), 356 F.3d 1345, 1347 (11th Cir. 2004).

33. In the cases at bar, like the debtor in *Cobblestone*, the Debtors have not filed their cases in good faith. Although the Debtors own more than one asset, the Real Property comprises the vast majority of their assets. Essentially all of the Debtors' assets consist of land held for investment purposes and there is no meaningful operational business enterprise employing

9

persons in the community or with ongoing business operations. Almost all unsecured creditors of the Debtors are insiders. Neither Debtor conducts a business which can be reorganized under chapter 11.

34. The Debtors filed their bankruptcy cases after defaulting on the Farm Credit loans and negotiations between the parties were no longer productive. The Debtors, and the guarantors of the Farm Credit loans, received a demand letter from Farm Credit demanding repayment of the Farm Credit loans and threatening foreclosure and other remedies. Rather than litigating a foreclosure action with Farm Credit in state court, the Debtors chose to file their petitions and invoke the automatic stay despite not having businesses to reorganize.

35. Finally, the Plan proposed by the Debtors evidences the lack of good faith by the Debtors and proves that the Debtors cannot be reorganized. As mentioned, the Debtors are requesting the Court confirm a Plan that provides for a portion of its collateral (the Woodstock Site) be deeded to Farm Credit in full satisfaction of all four Notes and to provide for a permanent injunction against seeking any recovery from Mr. and Mrs. Roberts under their personal guaranties. Mr. Roberts would continue to own 100% of the equity in the two Debtors and Farm Credit will be asked to release its mortgages on nearly 4,000 acres of land it bargained for as collateral to secure the Debtors' obligations. The fatally flawed Plan ignores the fact that one of the Notes is not even secured by the Woodstock Site.

36. The Debtors' Plan amounts to a partial "dirt for debt" plan which cannot be confirmed. The treatment provided Farm Credit in the Plan violates the "fair and equitable" requirement of 11 U.S.C. § 1129(b)(1) since providing Farm Credit with only a portion of its collateral in full satisfaction of its claims does not provide for the "indubitable equivalent" of Farm Credit's secured claims. 11 U.S.C. § 1129(b)(2)(A)(iii). To provide for the indubitable

10
SGR\8977059.2

equivalence of its claims under the four Notes, the Debtors must show that the Woodstock Site would 1) provide Farm Credit the present value of its claim and 2) insure the safety of or prevent jeopardy of the principal. *See In re Richfield 81 Partners II, LLC,* 2011 WL 1345563 (Bankr. N.D. Ga. 2011) (citing *In re Arnold & Baker Farms*, 85 F.3d 1415 (9th Cir. 1996)). The Debtors must prove indubitable equivalence by a preponderance of the evidence which is simply not possible given the unfavorable market conditions for real estate. *Id*. at *4.

37. Even if the Debtors were able to convince the Court that their Plan was confirmable, the Debtors will still not have satisfied the $5,000,000 Note since it is not secured by the Woodstock Site. The Woodstock Site secures the $4,700,000 Note, the $2,000,000 Note and $460,000 Note and the $5,000,000 Note is secured by the Union County Property which the Debtors intend to retain. If the Plan were amended to provide for repayment of the $5,000,000 Note over time, the Plan would still not be confirmable since the Debtors clearly do not have sufficient income to service any additional debt much less the $5,000,000 Note. In addition to the occasional and infrequent sale of portions of the Real Property, the Debtors' only income from the Real Property is from a hunting lease which pays Roberts Land approximately $8,000 once per year. The remainder of the Debtors' income consists of mortgage receivables pledged to Community State Bank and used to service its debt[1].

38. Therefore, the chapter 11 cases were filed in bad faith and because the cases were filed in bad faith and there is no realistic probability of a successful reorganization, the stay should be modified.

---

[1] Roberts Land reported gross income of $60,432 in 2010 and Union Land reported that it has no gross income at all in 2010.

11

> ii. **"Cause" exists to lift the automatic stay because Farm Credit's interest in the Real Property is not adequately protected.**

39. Cause also exists to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) because the Debtors lack sufficient income to adequately protect Farm Credit's interest in the Real Property. Neither Roberts Land nor Union Land are generating enough income from the operation of the Real Property to fund adequate protection payments to Farm Credit. Without the ability to adequately protect Farm Credit from the Real Property depreciating in value, the Court should lift the automatic stay to allow Farm Credit to enforce its rights under the Loan Documents.

> **B. The Court should dismiss the Debtors' bankruptcy cases.**

40. Because a decision to dismiss for bad faith is analyzed based on the same factors as a decision to modify the stay on the grounds of bad faith, *see Cobblestone*, 141 B.R. at 248, Farm Credit requests that the Court, in the alternative, dismiss the Chapter 11 cases, because, in addition to the facts and circumstances set out above, if Farm Credit were to obtain relief from the stay, the Debtors would be left with no business or assets on which a reorganization or a liquidation could be based, and the cases would be destined for dismissal in any case.

> **C. The Court should grant Farm Credit relief from the stay because no equity exists in the Real Property and the Real Property is not necessary for an effective reorganization.**

41. By this Motion, Farm Credit seeks the entry of a order granting relief from the automatic stay to allow Farm Credit to exercise its rights and remedies pursuant to the Loan Documents and state law to, among other things, commence foreclosure proceedings on the Real Property, take immediate possession and control of the Real Property and to collect rents and other revenues generated thereby. 11 U.S.C. § 362(d) provides in pertinent part,

> On request of a party in interest and after notice and a hearing, the court shall

grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— . . .

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d)(2).

42. In moving for relief from the automatic stay under 362(d)(2), the party requesting such relief bears the burden of showing that no equity exists in the collateral. *See* 11 U.S.C. § 362(g). However, the burden shifts to the party opposing the relief to prove all remaining issues. *Id.* Here, Farm Credit bears the burden of showing that the value of the Real Property is less than the amount the Debtors owe Farm Credit under the Loan Documents. The Debtors must show that the Real Property is necessary to an effective reorganization.

43. Farm Credit asserts that with regard to the $4,700,000 Note, the $2,000,000 Note and the $460,000 Note, 362(d)(2)(A) is satisfied because evidence shows that the Debtors have no equity in the Real Property securing each of those loans. Relief under 362(d)(2(A) is not sought under the $5,000,000 Note since it is secured only by the Union County Property which has an appraised value in excess of the amounts owed under the $5,000,000 Note. Appraisals obtained by Farm Credit show that the Real Property serving as the primary collateral securing the $4,700,000 Note, the $2,000,000 Note and the $460,000 Note is valued at less than $5,800,000 and the outstanding obligations under those Notes as of the Petition Date were approximately $7,442,000[2].

---

[2] The Debtors apparently agree with Farm Credit regarding the value and Columbia County Properties but have placed a value of $17,900,000 on the Woodstock Site – almost four times Farm Credit's appraised value.

44. Farm Credit having shown that no substantial equity exists in the Real Property, the burden now shifts to show that the Real Property is necessary to an effective reorganization. "The appropriate test for determining whether collateral is 'necessary to an effective reorganization' is (1) whether the collateral is, in fact, necessary to his reorganization efforts, and (2) there is a reasonable possibility of a successful reorganization within a reasonable time." *Farm Credit of Central Florida, ACA v. Polk*, 160 B.R. 870, 874 (M.D. Fla. 1993); *see United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1998).

45. To satisfy the test that collateral is "necessary to an effective reorganization," more is required than a bare assertion by the Debtors that the Real Property is necessary for their survival. *In re Global Ship Systems, LLC*, 391 B.R. 193, 208 (Bankr. S.D. Ga. 2007). As acknowledged by the 11th Circuit, "the mere fact that the property is indispensable to the debtor's survival is insufficient." *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 n.7 (11th Cir. 1984).

46. The Debtors must demonstrate the existence of a reasonable possibility of a successful reorganization. In doing so, the Debtors' assertions "cannot be grounded solely on speculation . . . and a 'mere financial pipe dream' is insufficient to meet the requirements of § 362(d)(2)." *In re Global Ship Systems, LLC*, 391 B.R. at 208 (citing *In re 6200 Ridge, Inc.*, 69 B.R. 837, 843 (Bankr. E.D. Pa. 1987)). Moreover, the Debtors cannot "rely solely on the fact that it 'wants to forestall foreclosure so that the property can be sold on the market.'" *Id.* at 209 (citing *In re Park Timbers, Inc.*, 58 B.R. 647, 651 (Bankr. D. Del. 1985)).

47. The facts of these cases are similar to the facts presented in *In re Global Ship Systems, LLC*. There, upon a motion filed by the debtor's major lender seeking dismissal or relief under 362(b)(2), the Court granted the lender's motion because the debtor did not

14

demonstrate evidence sufficient to show that confirmation of a plan was feasible. Key to the Court's determination was the fact that the debtor had no "funds to service the debt, operate the property, or pay its insurance, taxes, or other bills, and it does not have the capital to cure any waste or deterioration to the property." *Id.* Furthermore, the Court stated that "[a]ll it has is hope that it can be sold and in the interim wants [the lender] to bear all the risks." *Id.*

48. The same facts exist in the present cases. As stated above, the Plan is fatally flawed since the $5,000,000 Note cannot be satisfied by the Woodstock Site collateral and the Debtors generate insufficient income to provide any adequate protection payments or debt servicing. Without a substantial and steady stream of income, the Debtors cannot satisfy their financial obligations to Farm Credit, let alone operate the Real Property, maintain adequate insurance on the Real Property or pay their taxes. Since the Debtors lack the funds necessary to meet their monetary obligations, the only feasible scenario for the Debtors is that a buyer can be found to purchase the Real Property. The Woodstock Site has been aggressively marketed for over three years and there have been zero offers. Meanwhile, as the Debtors fall further behind on their pecuniary obligations and time passes without the Debtors finding a buyer or paying Farm Credit, Farm Credit's risk exposure correspondingly increases.

49. The fact that the Debtors lack sufficient income or other revenue to fund a chapter 11 plan of reorganization means that the Debtors cannot show that they can achieve a successful reorganization within a reasonable amount of time. The Debtors have temporarily obtained protection from their creditors by seeking bankruptcy relief. However, the Debtors have provided no indication whatsoever that they have the resources or ability to reorganize, let alone satisfied their obligations to Farm Credit. Therefore, this Court should grant Farm Credit relief from the automatic stay to enforce its rights pursuant to the Loan Documents.

SGR\8977059.2

WHEREFORE, Farm Credit prays that the Court enter an order (a) granting relief from the automatic stay pursuant to Section 362(d)(1) or 362(d)(2) so that Farm Credit may proceed to exercise its rights and remedies against the Real Property under state law and the Loan Documents, including, but not limited to, the right to conduct a foreclosure sale, to confirm the sale and file its proofs of claim in this cases to the extent of any deficiency from the sale; and (b) granting such other and further relief as the Court deems just and proper.

This 19th day of July, 2011.  Respectfully submitted,

Suite 3100, Promenade II
1230 Peachtree Street,
Atlanta, Georgia 30309
(404) 815-3500

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Brian P. Hall*
Brian P. Hall
Fla. Bar No. 70051
Attorneys for Farm Credit of Florida, ACA