# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ROBERTS LAND & TIMBER INVESTMENT CORP., ET AL., | ) ) | Case No. 3:11-bk-03851-PMG |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

## OBJECTION TO DEBTORS' DISCLOSURE STATEMENT

**COMES NOW** Farm Credit of Florida, ACA ("Farm Credit"), by and through its counsel, and files its Objection to Debtors' Disclosure Statement (the "Disclosure Statement") in support of the Debtors' Joint Plan of Reorganization dated June 7, 2011 (the "Plan"), and respectfully shows the Court as follows:

## SUMMARY OF ARGUMENT

1. The Court should decline to approve the Debtor's Disclosure Statement because it supports a plan of reorganization that is fatally flawed and cannot be confirmed under 11 U.S.C. § 1129. The Plan is a partial "dirt for debt" plan seeking to force Farm Credit to receive a portion of its real property (the "Woodstock Site") in *full* satisfaction of its $11,400,000 in claims while the Debtors retain thousand of acres of real property collateral which Farm Credit is forced to release under the plan. The Woodstock Site comprises less than a third of the collateral securing Farm Credit's claims, has an appraised value of only $4,450,000 and is not even collateral for one of the four notes executed and delivered in favor of Farm Credit. The Plan is not confirmable and no alternative plan is available to the Debtors since neither Debtor generates sufficient income to service even a portion of the Farm Credit debt.

2. The Disclosure Statement is inadequate in a number of respects but most

importantly the Court should not approve the Disclosure Statement and authorize the solicitation of votes for a Plan which could never be confirmed. Allowing the Debtors to amend the Disclosure Statement would be futile since the Debtors cannot cure the fatal defects in the Plan.

## JURISDICTION & VENUE

3. This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. § 1334(b). This is a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. as amended (the "Bankruptcy Code").

## BACKGROUND

4. On May 25, 2011 (the "Petition Date"), Roberts Land & Timber Investment Corp. ("Roberts Land") and Union Land & Timber Corp. ("Union Land" collectively with Roberts Land, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. Each Debtor continues in possession of its property and is operating its business pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. On July 6, 2011, this Court entered its Order Directing Joint Administration of Cases, consolidating the Debtors' bankruptcy cases for procedural purposes only. Farm Credit is the largest creditor in each bankruptcy case by a large margin and is owed approximately $11,400,000 secured by first mortgages on real property comprising approximately 5,400 acres located in Columbia, Union and Baker Counties (the "Real Property Collateral"). Union Land owns approximately 515 acres of the Real Property Collateral in Union and Columbia Counties and Roberts Land is the maker of all of the promissory notes and owns the remainder of the Real Property Collateral. The following chart summarizes the Debtors' obligations and generally

2

describes the collateral held by Farm Credit:

| Loan Number and Original Principal Amount | Amount Owed on Petition Date | Collateral Description |
|---|---|---|
| 767194-03 $5,000,000.00 | $4,480,039.75 | 1st Mortgage on 3,776 acres in Union County, Florida |
| 496711-01 $4,700,000.00 | $4,858,965.82 | 1st Mortgage on Woodstock Site in Baker County, Florida |
| | | 2nd Mortgage on Union County tract |
| | | 1st Mortgage on 96 acres in Columbia County Florida |
| 767194-01 $2,000,000.00 | $2,100,039.93 | 2nd Mortgage on Woodstock Site in Baker County, Florida |
| | | 3rd Mortgage on Union County tract |
| | | 2nd Mortgage on Columbia County tract |
| 767194-02 $460,000.00 | $483,009.16 | 2nd Mortgage on Woodstock Site in Baker County, Florida |
| | | 3rd Mortgage on Union County tract |
| | | 2nd Mortgage on Columbia County tract |

6. Union Land's schedules indicate that Union Land has only one other non-insider creditor, Community State Bank, which purportedly holds a fully secured claim in the amount of $645,000 secured by 155 acres of land in St. Johns County, Florida. In addition to the Real Property Collateral and the Community State Bank collateral, Union Land has 186 acres of land in Lafayette County, Florida. The Debtor indicates that the Lafayette Property is unencumbered and valued at $279,000.

7. Other than Farm Credit and Community State Bank, Roberts Land's schedules

3

lists two additional non-insider creditors having unsecured claims of less than $200,000. Roberts has no unencumbered assets.

8. The Real Property Collateral produces little or no income for the Debtors and is held for investment purposes.

## **ARGUMENT**

9. A disclosure statement shall provide "adequate information," pursuant to Section 1125(a)(1) of the Bankruptcy Code, which provides in relevant part:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . . .

Thus a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the debtor's plan. *See In re Zenith Elecs Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); *In re Copy Crafters Quickprint, Inc.* 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988).

10. A court has broad discretion in determining whether a disclosure statement contains adequate information. *Mabey v. Sw. Elec. Power Co.*, 150 F.3d 503, 518 (5th Cir. 1988), cert. denied, 119 S. Ct. 2019 (1999).

A. <u>The Fatal Flaws in the Debtor's Plan Preclude Approval of the Disclosure Statement</u>

11. The clear inadequacies of a proposed plan of reorganization should be addressed at the disclosure statement hearing to avoid wasting time and money to solicit votes for a fatally-flawed plan. *See e.g. In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (plan distribution and vote solicitation is unwise and inappropriate if the plan cannot be legally confirmed). Thus, where a plan is patently unconfirmable, it is well-settled that grounds exist to

reject the accompanying disclosure statement. *See id; In re Market Square Inn, Inc*., 163 B.R. 64 (Bankr. W.D. Pa. 1994) (where it is clear that reorganization plan is not capable of confirmation, it is appropriate to refuse approval of the disclosure statement); *In re Dakota Rail, Inc.*, 104 B.R. 138 (Bankr. D. Minn. 1989) (allowing facially unconfirmable plan to accompany disclosure statement violates statutory disclosure requirements).

12. As discussed, the obligations owed to Farm Credit by the Debtors were extended at different times and under four separate notes. The Plan proposes to deed the Woodstock Site to Farm Credit to satisfy the obligations under all four Notes -- ignoring the fact that the Woodstock Site does not serve as collateral for the $5,000,000 Note, which is secured by a first priority mortgage on the Union County Property. Since Farm Credit is in its own class and will not vote in support of the Plan, the Debtor will have to cram down the Plan under 11 U.S.C. § 1129(b) and convince the Court that the Plan is "fair and equitable" and that deeding the Woodstock Site to Farm Credit provides the "indubitable equivalent" of its claims. 11 U.S.C. § 1129(b)(2)(A)(iii). It is axiomatic that since the Woodstock Site is not collateral for the $5,000,000 Note, it cannot provide the indubitable equivalent of the secured claim under the $5,000,000 Note.

B. <u>Other Specific Objections to the Adequacy of the Disclosure Statement</u>

13. The Disclosure Statement omits information essential for a hypothetical investor to evaluate the Plan and make an informed judgment. Instead, it includes extraneous information on relationships between Farm Credit and certain affiliates of the Debtors including a chart of payments made by affiliates of the Debtors to Farm Credit which have no bearing on the Debtors' current financial condition or the Plan.

14. The Debtor did not provide any information regarding its outrageous valuation of

the Woodstock Site provided in the Disclosure Statement or why it is nearly four times the appraised value received by Farm Credit. Even if the Court allows the Plan to proceed to the confirmation process, the value of the Woodstock Site is the central issue which the Court and all creditors need to consider regarding the Plan. The Debtor ignores the Farm Credit appraisal and the fact that the Woodstock Site has been actively marketed for over three years at a price close to the Debtors' appraisal and there have been no offers. A comparison of the two appraisals and a description of the risk of a partial dirt for debt plan and the effect of a lower valuation than the Debtor's appraisal should be included in the Disclosure Statement to allow creditors the ability to evaluate the Plan.

15. The Disclosure Statement provides inadequate financial information about the Debtors' future performance. The Debtors include a simple cash flow analysis and include some information on past performance but fail to recite how they intend to generate the projected income which averages approximately $220,000 per year over the next 7 years when combined gross income in 2010 was less than $61,000.

16. Substantial transfers were made by the Debtors prior to the Petition Date, including a settlement with TD Bank. In addition, the Debtors have significant claims by insiders and there were also significant transfers apparently from and to insiders during the one year period prior to the Petition Date. The Debtors fail to discuss the transfers and whether the payments could be avoided under the Bankruptcy Code. Additional information on how the insider claims were incurred and how the funds were used by the Debtors should be included in the Disclosure Statement.

17. The Plan mentions an adversary proceeding wherein the Debtors request a temporary and permanent injunction against Farm Credit to prevent Farm Credit from enforcing

6
SGR\8982601.3

its rights under guaranties provided by Avery and Twyla Roberts. Insufficient information as to why the permanent injunction is necessary for the confirmation of the Plan or beneficial to the Debtors is included in the Disclosure Statement. Although the Plan contains some commentary that the guarantors will contribute capital to the Debtors, the cash flows included on Pages 14-15 of the Disclosure Statement do not reflect these purported contributions and there is no information in the Disclosure Statement regarding how the possibility of independent actions against the guarantors will affect the Debtors.

18. The Debtors do not include any liquidation analysis stating that it is unnecessary since all non-insider unsecured claims will receive 100% of their claims. While it is true that the Debtors expect to pay the two unsecured creditors they believe have valid claims in full, the class is still listed as impaired. In addition, other creditors such as Farm Credit have an interest in the liquidation analysis since, if a realistic valuation of the Woodstock Site and Real Property Collateral were included in the Plan, it is possible Farm Credit would have a significant unsecured claim. In fact, if the Debtors values were to be believed, a liquidation plan would result in a much quicker repayment to all creditors rather than the 10 year payment to unsecured creditors set forth in the Plan.

**WHEREFORE**, Farm Credit respectfully requests that this Court enter an Order denying Debtor's request for approval of the Disclosure Statement and for such other and further relief as is just and proper.

Dated this 20th day of July, 2011.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

1230 Peachtree Street, N.E.
Suite 3100
Atlanta, GA  30309
(404) 815-3500

*/s/ Brian P. Hall*
Brian P. Hall
Florida Bar No. 070051