UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

Case No. 3:11-bk-03851-PMG
ROBERTS LAND & TIMBER          and Case No. 3:11-bk-03853-PMG
INVESTMENT CORP.,

    Debtor,

and                            Jointly Administered Under
                               Case No. 3:11-bk-03851-PMG

UNION LAND & TIMBER CORP,

    Chapter 11 Debtors.

_____

DEBTORS' AMENDED AND RESTATED
JOINT CHAPTER 11 PLAN OF REORGANIZATION

The Debtors and Debtors-in-Possession, Roberts Land & Timber Investment Corp. ("Roberts Land") and Union Land & Timber Corp. ("Union Land"), each a Florida corporation (individually, a "Debtor" and collectively, the "Debtors"), through their undersigned counsel and pursuant to §§ 1121 and 1123, Title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), propose this Amended and Restated Joint Chapter 11 Plan of Reorganization (the "Plan") for the resolution of all claims against and interests in the Debtors. The Debtors are the proponents of this Plan within the meaning of § 1129 of the Bankruptcy Code. **This Plan amends and restates all previous plans (as modified from time to time) in their entireties that have been filed by the Debtors in this Bankruptcy Case.**

Article 1
Introduction

1.1     Disclosure Statement. After filing this Plan, the Debtors will file and serve an Amended and Restated Disclosure Statement (or a modification to the Disclosure Statement that was previously approved by this Bankruptcy Court), as required by § 1125 of the Bankruptcy Code.

1.2     Property and Claims. This Plan deals with all Property of the Debtors and provides for the treatment of all Claims against and Interests in the Debtors and their Property.

1.3     For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document will be substantially in that form or substantially on those terms and conditions; (c) any reference in the Plan to an existing document or exhibit having been filed or to be filed will mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to "Articles" are references to Articles of the Plan; (e) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (f) the rules of construction set forth in § 102 of the Bankruptcy Code will apply; and (g) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.4     The provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed in the Plan.

1.5     Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflict of laws.

Article 2
Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1     The following terms, when used in this Plan, shall have the following meaning:

2.1.1   *"Administrative Claim"* means a Claim for payment of an administrative expense entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.1.2   *"Allowed Claim"* shall mean a Claim or any portion thereof that is enforceable against the Debtor(s) or enforceable against the Property of the Debtor(s) under §§ 502 or 503 of the Bankruptcy Code.

2

2.1.3    *"Allowed Secured Claim"* shall mean the amount of the Allowed Claim held by parties secured by Property of the Debtors which is equal to the amount stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4    *"Allowed Unsecured Claim"* shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5    *"Avoidance Action"* means any claim or cause of action of the Estates arising out of or maintainable pursuant to §§ 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.6    *"Bankruptcy Case"* means the chapter 11 cases, as jointly administered, initiated by the Debtors' filing of voluntary petitions for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code on the Petition Date.

2.1.7    *"Bankruptcy Code"* means Title 11 of the United States Code.

2.1.8    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

2.1.9    *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.10    *"Business Day"* means any day other than a Saturday, Sunday or "legal holiday," as defined in Bankruptcy Rule 9006(a).

2.1.11    *"Capital Expense Reserve Account"* has the meaning attributed to it in Article 2.1.45.

2.1.12    *"Cash"* means legal tender of the United States of America and equivalents thereof.

2.1.13    *"Causes of Action"* means all actions (including Avoidance Actions), causes of action, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, cross-claims, counterclaims, third party claims, indemnity claims, contribution claims or any other claims (disputed or undisputed), suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date.

2.1.14 *"Chapter 11"* shall mean chapter 11 of the Bankruptcy Code.

2.1.15 *"Claim"* means a claim against either Debtor whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

2.1.16 *"Claims Objection Deadline"* means the later of the first Business Day which is (i) 30 days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be extended from time to time by the Bankruptcy Court without further notice to parties in interest.

2.1.17 *"Classes"* means a category of Claims or Interests described in this Plan.

2.1.18 *"Columbia Property"* means Roberts Land's approximately 96 acres in Columbia County, Florida, and any related personal property, timber, fixtures, intangibles, and other property interest subject to or described in Farm Credit's loan documents.

2.1.19 *"Confirmation Date"* means the date on which the Bankruptcy Court enters a Confirmation Order confirming the Plan.

2.1.20 *"Confirmation Hearing"* means the hearing before the Bankruptcy Court to consider confirmation of this Plan and related matters under §§ 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued.

2.1.21 *"Confirmation Order"* means the order confirming this Plan pursuant to § 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtors.

2.1.22 *"Deficiency Payment Date"* has the meaning attributed to it in Article 4.4.

2.1.23 *"Disclosure Statement"* means the disclosure statement for the Debtors' Plan, as amended, supplemented, or modified from time to time, including all exhibits and Schedules that relate to the Plan that is prepared and distributed by the Debtors in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

2.1.24 *"Disputed"* means (a) with respect to any Administrative Claim, other than an Administrative Claim that has been Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court or that was incurred by the Debtors in the ordinary course of business during the Bankruptcy Case, a Claim: that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort,

4

statute, contract, equity, or common law; or (b) with respect to any Claim that is not an Administrative Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, a Claim: (i) if no Proof of Claim has been filed or deemed to have been filed by the applicable bar date, that has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed; (ii) if a Proof of Claim has been filed or deemed to have been filed by the applicable bar date, as to which the Debtors have timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any other orders of the Bankruptcy Court, or which is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; (iii) for which a Proof of Claim was required to be filed by the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, but as to which a Proof of Claim was not timely or properly filed; (iv) for damages based upon the rejection by the Debtors of an Executory Contract under § 365 of the Bankruptcy Code and as to which the applicable bar date has not passed; (v) that is disputed under the provisions of the Plan; or (vi) if not otherwise Allowed, as to which the applicable Claims Objection Deadline has not expired.

2.1.25 *"Distribution"* means any distribution by the Debtors to a Holder of an Allowed Claim.

2.1.26 *"District Court"* means the United States District Court for the Middle District of Florida, Jacksonville Division.

2.1.27 *"Effective Date"* means the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Articles 11.1 and 11.2 of this Plan have been either satisfied or waived pursuant to Article 11.3 and is the date on which this Plan becomes effective.

2.1.28 *"Estate"* means, with regard to the Debtors, the estates that were created by the commencement by the Debtors of the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of the Debtors and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtors or their estates shall have had as of the commencement of the Bankruptcy Case, or which their estates acquired after the commencement of the Bankruptcy Case, whether by virtue of §§ 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.29 *"Executory Contract or Unexpired Lease"* means all executory contracts and unexpired leases to which either Debtor is a party.

2.1.30 *"Extended Term"* has the meaning attributed to it in Article 4.4.

5

2.1.31 *"Farm Credit"* means Farm Credit of Florida, ACA, as successor by merger to Farm Credit of North Florida, ACA.

2.1.32  *"FC Loans"* has the meaning attributed to it in Article 4.4.

2.1.33  *"Final Distribution"* means the Distribution by the Debtors that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.34  *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Bankruptcy Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek *certiorari* or move for a new trial, reargument or rehearing has expired and no appeal or petition for *certiorari* or other proceedings for a new trial, reargument or rehearing has been timely taken. Further, as to a final order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Bankruptcy Case or the docket of any court of competent jurisdiction, or as to which any appeal that has been taken or any petition for *certiorari* that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which *certiorari* was sought or the new trial, reargument or rehearing will have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; provided, however, the possibility that a party may file a motion for reconsideration of an order or judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure or Rule 9024 of the Bankruptcy Rules will not preclude an order from being a Final Order.

2.1.35  *"First Priority TD Mortgage"* has the meaning attributed to it in Article 4.3(a).

2.1.36  *"Florida DOR"* means the Department of Revenue of the State of Florida.

2.1.37  *"Foreclosure Conditions"* has the meaning attributed to it in Article 4.4.

2.1.38 *"Guarantors"* means Avery C. Roberts or Twyla J. Roberts in their capacities as the guarantors of some or all of the FC Loans.

2.1.39 *"Holder"* means a holder of a Claim or Interest, as applicable.

2.1.40  *"Holding Company"* means a limited liability company that shall be formed immediately following the Bankruptcy Court's entry of the Confirmation Order, which shall own 100% of the Reorganized Debtors.

2.1.41  *"Impaired"* shall have the meaning ascribed thereto in § 1124 of the Bankruptcy Code.

2.1.42   *"Initial Term"* has the meaning attributed to it in Article 4.4.

2.1.43  *"Interests"* means the equity interests in the Debtors.

2.1.44   *"Interest Reserve Account"* has the meaning attributed to it in Article 2.1.45.

2.1.45  *"Investment"* means Cash in the amount of $1.65 million that will be tendered by the Sponsor to the Reorganized Debtors (or to the Holding Company) on the Plan's Effective Date. If (and only if) the Debtors elect Treatment Option 3 for Farm Credit's Class 4 Claim, the Investment will be used in part to fund (i) a $1.4 million interest reserve (the "*Interest Reserve*") which will cover at least three years of the Reorganized Debtors' debt service expenses to Farm Credit under Treatment Option 3 and (ii) a $250,000 capital expense account to cover the Reorganized Debtors' normal operating expenses (the "*Capital Expense Reserve Account*"). At the Sponsor's option (or the option of the Holding Company), all or some of the Investment may be secured by Liens (which shall be junior to Farm Credit's Liens) on all or some of the assets of the Reorganized Debtors, including, but not limited to, (i) the Columbia Property, (ii) the Union Property and (iii) the Woodstock Property.

2.1.46  *"IRS"* means the United States Internal Revenue Service.

2.1.47  *"Junior TD Bank Loan"* has the meaning attributed to it in Article 4.3(b).

2.1.48   *"Lender"* has the meaning attributed to it in Article 4.4.

2.1.49  *"Lien"* has the meaning set forth in § 101(37) of the Bankruptcy Code.

2.1.50  *"Office Property"* has the meaning attributed to it in Article 4.3(a).

2.1.51  *"Person"* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in § 101(27) of the Bankruptcy Code) or other entity.

2.1.52  *"Petition Date"* means May 25, 2011.

2.1.53  *"Plan"* means this plan of reorganization as the same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.54 *"Prime Rate"* means the generally prevailing Prime Rate as published in *The Wall Street Journal.*

2.1.55 *"Priority Claim"* means a Claim entitled to priority under the provisions of § 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.56 *"Priority Tax Claim"* means a Claim against either Debtor that is of a kind specified in § 507(a)(8) of the Bankruptcy Code.

2.1.57 *"Professional Compensation"* means any amounts that the Bankruptcy Court allows pursuant to (i) § 330 of the Bankruptcy Code as compensation earned and/or reimbursement of expenses incurred by professionals employed by the Debtors, and (ii) § 503(b)(3)-(4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.58 *"Proof of Claim"* means a proof of claim filed against either or both of the Debtors in the Bankruptcy Case.

2.1.59 *"Property"* means all assets and property included within "property of the estates" as set forth in and within the meaning of § 541 of the Bankruptcy Code.

2.1.60 *"Record Date"* means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

2.1.61 *"Record Holder"* means the Holder of a Claim as of the Record Date.

2.1.62 *"Release Schedule"* has the meaning attributed to it in Article 4.4.

2.1.63 *"Released Property"* has the meaning attributed to it in Article 4.4.

2.1.64 *"Reorganization Transaction"* means the restructuring of the Debtors' indebtedness to TD Bank, Farm Credit and Community State Bank and other Creditors pursuant to the Plan, which will be followed immediately by the acquisition by the Sponsor of an equity interest in the Reorganized Debtors (or in the Holding Company).

2.1.65 *"Reorganized Debtors"* means the Debtors (which shall be converted from Florida corporations to Florida limited liability companies) and their Estates after the occurrence of the Effective Date.

2.1.66 *"Retained Action"* means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which either Debtor or such Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by either Debtor, (iii) claims and Causes of Action relating to strict enforcement of either Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of either Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of either Debtor's businesses, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.67 *"Schedules"* means the Schedules of Assets and Liabilities that the Debtors filed in the Bankruptcy Case, as such schedules may be amended and/or supplemented from time to time in accordance with Bankruptcy Rule 1009.

2.1.68 *"Secured Claim"* means a Claim against either or both Debtors that is secured (as of the Petition Date) by a Lien on any property of the Debtor(s), but only to the extent of the value of such property pursuant to § 506(a) of the Bankruptcy Code.

2.1.69 *"Secured Receivables"* has the meaning attributed to it in Article 4.5.

2.1.70 *"Senior TD Bank Loan"* has the meaning attributed to it in Article 4.3(a).

2.1.71 *"Sponsor"* means the ACR Family Trust, which shall be formed on or before the Effective Date.

2.1.72 *"St. Johns Property"* has the meaning attributed to it in Article 4.5.

2.1.73 *"State Court"* has the meaning attributed to it in Article 4.4.

2.1.74 *"TD Bank"* means TD Bank, National Association, as the successor by merger with Carolina First Bank, a South Carolina corporation, as previous successor by merger with Mercantile Bank.

2.1.75 *"TD Debt Maturity Date"* has the meaning attributed to it in Article 4.3(a).

2.1.76 *"Union Claim"* has the meaning attributed to it in Article 4.4.

2.1.77    *"Union Property"* means the approximately 3,776 acres of real property in Union County, Florida (including the Guarantors' homestead), and any related personal property, timber, fixtures, intangibles, and other property interests owned by (i) Roberts Land, (ii) Union Land and/or (iii) the Guarantors, which are subject to and/or described in Farm Credit's loan documents.

2.1.78    *"Unsecured Claim"* means any Claim against the Debtors that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.1.79    *"Wells Fargo Lease"* has the meaning attributed to it in Article 9.1.

2.1.80    *"Woodstock Claim"* has the meaning attributed to it in Article 4.4.

2.1.81    *"Woodstock Property"* means Roberts Land's approximately 1,483 acres of real property in Baker County, Florida together with any personal property, timber, fixtures, intangibles, and other property interests subject to and/or described in Farm Credit's loan documents.

2.2    Time. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is not a Business Day, then the time for the next occurrence or happening of said event shall be extended to the next Business Day.

2.3    Events of Default. In the event of a default by the Reorganized Debtors in payments under the Plan or otherwise, the Holder of such Claim must send written notice to the Reorganized Debtors at the addresses of record for the Reorganized Debtors as reflected on the docket for this Bankruptcy Case, unless such Holder has received written notice of a change of address for Debtors, as applicable. The Holder of such Claim must send such notice via certified mail with a courtesy copy via email and regular mail to James H. Post, Esq. of Smith Hulsey & Busey at the address reflected in the then current directory of the Florida Bar. The Reorganized Debtors shall have 10 days from their receipt of the notice of default to cure such default. Receipt by the Reorganized Debtors' attorney is for courtesy notice only and shall not be deemed to constitute receipt by the Reorganized Debtors of the required notice.

Article 3
Classification of Claims and Interests; Impairment

3.1    Summary. The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2    Class 1 consists of the Priority and Non-Priority Tax Claims of the IRS.

3.3    Class 2 consists of the Priority Tax Claims of the Florida DOR.

3.4    Class 3 consists of the Secured and Unsecured Claims of TD Bank.

3.5    Class 4 consists of the Secured Claims of Farm Credit.

3.6    Class 5 consists of the Secured Claims of Community State Bank.

3.7    Class 6 consists of Unsecured Claims.

3.8    Class 7 consists of Interests in the Debtors.

Article 4
Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. The Debtors reserve the right to object to any and all claims.

The Debtors reserve the right to prepay any claim in full at any time in accordance with the terms of the Plan without prepayment penalty.

4.1    Class 1: IRS

*4.1(a) Priority Tax Claim of the IRS (if any)*

**Classification:** Class 1(a) consists of the Priority Tax Claim of the IRS (if any) that may be filed in this Bankruptcy Case. The amount of any Priority Tax Claim of the IRS that is not otherwise due and payable on or prior to the Effective Date, and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to § 1141 of the Bankruptcy Code.

**Treatment:** The Reorganized Debtors shall pay the IRS the amount of its Class 1(a) Priority Tax Claim (if any and to the extent it is Allowed) in equal monthly payments over a period not to exceed five years following the Petition Date pursuant to § 301 of the Bankruptcy Code, which payments shall commence on the Effective Date and continue on the thirtieth day of each month thereafter until the IRS' Class 1(a) Priority Tax Claim is paid in full. The IRS' Class 1(a) Priority Tax Claim shall accrue interest on the outstanding balance from the Effective Date calculated at the fixed rate of four percent

per annum or such lesser rate agreed to by the IRS. The Debtors may pay any such Claim in full at any time.

Based on the information known and available to the Debtors, as of the date of the filing of the Bankruptcy Case, the IRS does not hold and will not be filing any Proof of Claim in the Bankruptcy Case. Accordingly, the monthly payment to the IRS on its Class 1(a) Priority Tax Claim shall be $0.00.

### 4.1(b) Non-Priority Tax Claim of the IRS (if any)

**Classification:** Class 1(b) consists of the non-priority unsecured tax Claim of the IRS (if any) that may be filed in the Bankruptcy Case.

**Treatment:** If a non-priority, unsecured tax Claim is filed, the Debtors shall pay the IRS the full amount of such claim (if any and to the extent it is Allowed) in sixty equal monthly payments commencing on the Effective Date and continuing on or before the thirtieth day of each month thereafter.

Based on the information known and available to the Debtors, as of the date of the filing of the Bankruptcy Case, the IRS does not hold and will not be filing any Proof of Claim in the Bankruptcy Case. Accordingly, the monthly payment to the IRS on its Class 1(b) non-priority unsecured tax claim shall be $0.00.

A failure by the Debtors to make a payment to the IRS in respect of its Class 1(a) and 1(b) Claims (if any) pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtors fail to cure such default (with respect to payments owed to the IRS pursuant to its Class 1(a) and/or Class 1(b) Claims) within 20 days following the Debtors' (and their counsel's) receipt of notice from the IRS of such default, then the IRS may (a) enforce the entire amount of its Class 1(a) and Class 1(b) Claims; (b) exercise any and all rights and remedies it may have under applicable federal non-bankruptcy or state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court. The Debtors may pay any such Claim in full at any time.

**Voting:** Classes 1(a) and 1(b) are Impaired and the Holder(s) of Class 1(a) and 1(b) Claims are entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors from objecting to the Class 1(a) and 1(b) Claims for any reason.

### 4.2   Class 2: Tax Claim of the Florida DOR

*Classification*: Class 2 consists of any tax claim of the Florida DOR that may be filed in the Bankruptcy Case. The amount of any Claim by the Florida DOR for amounts that are not otherwise due and payable on or prior to the Effective Date, and the right of the Florida DOR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Florida DOR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to § 1141 of the Bankruptcy Code. The Debtors reserve the right to pay any tax Claim in full at any time.

To the best information, knowledge and belief of the Debtors, the Florida DOR does not hold and will not be filing a Proof of Claim in the Bankruptcy Case.

*Treatment*:   In the event that the Florida DOR files a Proof of Claim by the applicable bar date, the Debtors shall pay the full amount of such Claim (if any and to the extent it is Allowed) in equal monthly payments over a period not to exceed five years following the Petition Date pursuant to § 301 of the Bankruptcy Code, which payments shall commence on the Effective Date and continue on the thirtieth day of each month thereafter until the Florida DOR's Class 2 Claim is paid in full. The Florida DOR's Class 2 Claim shall accrue interest on the outstanding balance from the Effective Date calculated at the fixed rate of four percent per annum or such lesser rate agreed to by the Florida DOR. In the event the Florida DOR holds a tax lien against any of Debtors' property, such lien shall continue and attach to Debtors' Property to the same extent, validity and priority as existed on the Petition Date. Upon the Florida DOR's receipt of its final payment, the Florida DOR shall cancel and release its tax Lien (if any) on the Reorganized Debtors' Property.

Based on the information known and available to the Debtors, as of the date of the filing of the Bankruptcy Case, Florida DOR does not hold and will not be filing a tax Claim in the Bankruptcy Case. Accordingly, the monthly payment to the Florida DOR on its Class 2 Claim shall be $0.00.

A failure by the Reorganized Debtors to make a payment to the Florida DOR in respect of its Class 2 Claim (if any) pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtors fail to cure such default (with respect to payments owed to the Florida DOR pursuant to its Class 2 Claim) within 20 days following the Reorganized Debtors' (and their counsel's) receipt of notice from the Florida DOR of such default, then the Florida DOR may (a) enforce the entire amount of its Class 2 Claim; (b) exercise any and all rights and remedies it may have under applicable federal non-bankruptcy or state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

*Voting:* Class 2 is Impaired and the Holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors from objecting to the Class 2 Claim for any reason.

4.3     Class 3: TD Bank

*4.3(a) Secured Claim of TD Bank*

**Classification**: Class 3(a) consists of the secured claim of TD Bank arising from a loan in the amount of $198,662.95 (Loan Number 5610081217; the "Senior TD Bank Loan") that is secured by Roberts Land's business office and ten acres (Union County Parcel ID No. 16-05-19-00-000-0030-0; the "Office Property"), as described in more detail in that certain first priority Mortgage dated April 20, 2006, and recorded in Official Record Book 232, page 1, of the public records of Union County, Florida (the "First Priority TD Mortgage"). The Office Property has a market value of $570,000.

**Treatment**: In full satisfaction, settlement, release and discharge of TD Bank's Allowed Class 3(a) Claim, Roberts Land shall pay TD Bank the sum of the Senior TD Bank Loan (less any principal amounts that have been paid prior to the Effective Date) in monthly installments amortized at a fixed rate of five percent per annum over a 20-year term (or as otherwise agreed to between Roberts Land and TD Bank); provided, however, that this restructured indebtedness shall mature and be subject to a balloon payment of the entire principal balance and any accrued and unpaid interest on April 9, 2016 (the "TD Debt Maturity Date"). All payments of the Allowed Class 3(a) Claim (less any principal amounts that have been received by TD Bank with respect to such Claim) shall be due on the thirtieth day each month during the extended repayment term. Roberts Land shall be allowed to prepay the Allowed Class 3(a) Claim, or any portion thereof, without a prepayment penalty. TD Bank's Allowed Class 3(a) Claim shall be secured by continuing Liens in favor of TD Bank on the Office Property.

*4.3(b) Partially Secured Claim of TD Bank.*

**Classification**: Class 3(b) consists of the under-secured claim of TD Bank in the amount of $500,000 (Loan Number 56100067291; the "Junior TD Bank Loan"), which is secured by a junior mortgage on the Office Property pursuant to the terms and conditions set forth in that certain Roberts/Mercantile Bank Mediation Agreement dated March 9, 2011 that settled a civil action filed as "Palmetto Bluff Timberlands, LLC and Avery C. Roberts v. TD Bank, National Association, Case No. 2010-150-CA." Based upon (i) the value of the Office Property ($570,000) and (ii) the amount of the Senior TD Bank Loan ($198,662.95) secured by such property, TD Bank (with respect to the Junior TD Bank Loan) shall have:

- a secured Class 3(b) Claim in the amount of $371,337.05, and
- an unsecured Class 6 Claim in the amount of $128,662.95.

**Treatment**: In full satisfaction, settlement, release and discharge of TD Bank's Allowed Class 3(b) Claim, Roberts Land shall pay TD Bank the sum of $371,337.05 (less any principal amounts that have been paid prior to the Effective Date with respect to such Claim) in monthly installments amortized at a fixed rate of five percent per annum over a 20-year term (or as otherwise agreed to between Roberts Land and TD

Bank); provided, however, that this indebtedness shall also mature and be subject to a balloon payment of the entire principal balance and any accrued and unpaid interest on the TD Debt Maturity Date. All payments of the Allowed Class 3(b) Claim (less any principal amounts that have been paid prior to the Effective Date with respect to such Claim) shall be due on the thirtieth day of each month during the extended repayment term. Roberts Land shall be allowed to prepay the Allowed Class 3(b) Claim, or any portion thereof, without a prepayment penalty. TD Bank's Allowed Class 3(b) Claim shall be partially secured by continuing liens in favor of TD Bank on the Office Property (that shall be junior to the liens securing TD Bank's Allowed Class 3(a) Claim).

*Voting*: Classes 3(a) and 3(b) are Impaired and the Holders of Allowed Class 3(a) and 3(b) Claims are entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors from objecting to the Class 3(a) or Class 3(b) Claims for any reason.

### 4.4    Class 4: Farm Credit

*Classification:* Class 4 consists of Farm Credit's Secured Claim against the Debtors in the amount of approximately $13 million. The documents evidencing Farm Credit's Class 4 Claim are attached to the four Proofs of Claim filed by Farm Credit on September 30, 2011. Specifically, Farm Credit's Proofs of Claim evidence the following secured loans from Farm Credit to Roberts Land:

| Description | Proof of Claim | Loan Number | Original Principal Amount | Approx. Current Balance (Total) |
|---|---|---|---|---|
| Union Loan | No. 4 | No. 767194-03 | $5,000,000 | $4,750,000 |
| Woodstock Loans | No. 5 | No. 767194-01 | $2,000,000 | $8,250,000 |
|  | No. 6 | No. 496711-01 | $4,700,000 |  |
|  | No. 7 | No. 767194-02 | $460,000 |  |

Based on the values of the Properties securing the Union Loan and the Woodstock Loans (collectively, the "FC Loans"), Farm Credit's Class 4 Claim is secured by collateral having a value of at least $22 million including: (i) the Woodstock Property ($13,200,000),[1] (ii) the Union Property ($8,374,000)[2] and (iii) the Columbia Property ($400,000).

---

[1] Pursuant to the Court's findings on February 13, 2013, the Woodstock Property has a value of $13.2 million and secures the Woodstock Loans. Based on these findings, there is an equity cushion of approximately $5 million (38%) between the value of the Woodstock Property ($13.2 million), and (ii) the outstanding balances due under the Woodstock Loans (approximately $8.25 million).

[2] The Union Property has a value of at least $8,374,000 based upon an appraisal completed for Farm Credit (highest and best use of timberland) in March 2013. This value includes $7,522,000 for the land ($2,000/acre) and $822,000 for the improvements.

**Alternative Plan Treatments**

At the sole and exclusive option of the Debtors, which shall be exercised prior to the conclusion of the Confirmation Hearing, the Debtors shall inform the Court of their determination to elect to treat Farm Credit's Allowed Class 4 Claim under Plan Treatment 1, Plan Treatment 2 or Plan Treatment 3.

**Plan Treatment 1**

*Treatment*:   On the Effective Date, Farm Credit (as the Holder of the Allowed Class 4 Claim) will receive:

(a)        Union Claim: $4.75 million of Cash (financed in part by the Sponsor and/or an outside third-party lender (a "Lender")), in full and final satisfaction, settlement, release and discharge of and in exchange for the $4.75 million portion of the Allowed Class 4 Claim arising from indebtedness owed in connection with the Union Loan (the "Union Claim"); and

(b)        Woodstock Claim: $13.2 million of real property, in full and final satisfaction, settlement, release and discharge of and in exchange for the $8.25 million portion of Farm Credit's Allowed Class 4 Claim arising from indebtedness owed in connection with the Woodstock Loans (the "Woodstock Claim"). Specifically, Roberts Land shall execute and deliver to Farm Credit a special warranty deed in recordable form, together with such additional papers and instruments as may be required for title insurance purposes, transferring all of Roberts Land's interest in and to the Woodstock Property. Upon such transfer, each of the three notes evidencing the Woodstock Loans shall be deemed paid in full and the Liens securing such loans shall be deemed satisfied and released. Further, Farm Credit shall mark each of the notes evidencing the Woodstock Loans paid in full and return them to counsel for the Debtors. Roberts Land's tender of a special warranty deed to the Woodstock Property to Farm Credit (providing title to such property in the same form that such title was acquired by Roberts Land and mortgaged to Farm Credit) shall provide Farm Credit with the indubitable equivalent of and shall fully satisfy the Woodstock Claim.

Roberts Land's tender of the special warranty deed to Farm Credit shall be deemed to occur when such deed is tendered by physical delivery to Farm Credit at its office located at 11903 Southern Boulevard, Suite 200, West Palm Beach, Florida 33411. If Farm Credit fails to accept delivery of the deed within 45 days after it is tendered by Roberts Land under this Plan Treatment 1 (pursuant to the terms of a final Confirmation Order entered in the Bankruptcy Case), then (i) Farm Credit's Woodstock Claim will be discharged and extinguished, (ii) Farm Credit's Liens on the Woodstock Property shall terminate and be of no further force or effect, and Farm Credit shall record a satisfaction of all of its Liens (including its Liens on the Woodstock Property, the Union Property and the Columbia Property) in Baker County, Union County and Columbia County, and (iii) title to the Woodstock Property shall remain vested in Roberts Land free and clear of Farm Credit's Liens.

16

### Plan Treatment 2

*Treatment*:  On the Effective Date, Farm Credit (as the Holder of the Allowed Class 4 Claim) will receive:

(a)    Union Claim: $4.75 million of Cash (financed in part by the Sponsor and/or a Lender)[3], in full and final satisfaction, settlement, release and discharge of and in exchange for the Union Claim; and

(b)    Woodstock Claim: (i) relief to enforce its Lien rights on the Woodstock Property and (ii) Cash in the amount of a deficiency (if any) relating to the Woodstock Claim, in full and final satisfaction, settlement, release and discharge of and in exchange for the Woodstock Claim. To that end, the automatic stay/permanent injunction will be modified to allow Farm Credit to enforce its mortgage Liens on the Woodstock Property (but not its Liens on the Union Property or the Columbia Property) in a foreclosure suit to be filed in the Circuit Court of the Eighth Judicial Circuit, in and for Baker County, Florida ("State Court"), subject to the following terms and conditions (the "Foreclosure Conditions"):

1.  If Farm Credit believes the Woodstock Claim is not satisfied in full as a consequence of the foreclosure, a claim for any deficiency must be filed with the Court within 120 days after the Effective Date of this Plan, unless a Motion for Extension of Time is filed for good cause prior to the expiration of the 120 days and granted by this Court.  If no claim for a deficiency is timely filed, the Woodstock Claim shall be discharged and deemed to be extinguished and Farm Credit shall record a satisfaction of all of the Woodstock Loans (Proof of Claim Nos. 5, 6 and 7) in Union and Columbia Counties.

2.  Farm Credit's claim for a deficiency, if timely filed, will remain secured by Farm Credit's continuing Liens on (i) the Union Property (which Liens on the Union Property shall be subordinate to the post-petition Liens provided to the Reorganized Debtor to the Sponsor) and (ii) the Columbia Property.

3.  The Reorganized Debtors shall have 60 days to object to any timely filed deficiency claim or to pay said claim in full.  If the Reorganized Debtors object to the deficiency claim, the allowed amount of the deficiency claim shall be paid in Cash within 60 days of the entry of a Final Order determining the allowed amount of the deficiency claim (the "Deficiency Payment Date").

---

[3] To secure the Sponsor's and/or Lender's investment in and/or replacement loan to the Reorganized Debtors (which shall be used to pay the Union Claim in full), the Sponsor shall have first priority liens on all of the Union Property (except for the approximately 30 acres of such property that comprises the Guarantors' homestead).

4.    Farm Credit will be temporarily stayed from pursuing the Guarantors until the Deficiency Payment Date (if any).

### Plan Treatment 3

*Treatment*:   Union Claim and Woodstock Claim: Farm Credit (as the Holder of the Allowed Class 4 Claim) will receive, in full and final satisfaction, settlement, release and discharge of and in exchange for its entire Allowed Class 4 Claim, monthly interest-only payments on the last day of each month commencing on the month following the Effective Date with a final balloon payment of all outstanding principal and interest due four years after the Effective Date (which is expected to be December 31, 2017) (such period is referred to as the "Initial Term"), which monthly payments including the balloon payment will, in the aggregate, be equal to Farm Credit's Allowed Class 4 Claim together with interest at the following fixed rates (or an appropriate rate of interest determined by the Bankruptcy Court on or after the Confirmation Date):

- three and one quarter percent (3.25%) per annum for the first two years (months 1 through 24) of the Initial Term; and

- the Prime Rate (fixed for two years as of Prime Rate in effect on the first day of the twenty fifth month) plus one half percent (Prime Rate + 0.5%) per annum for the third and fourth years of the Initial Term (months 25 through 48).

Further, in the event the principal balance of Farm Credit's Allowed Class 4 Claim is reduced to $11 million during the Initial Term, then the Initial Term will automatically be extended for an additional period of four years (such additional period is referred to as the "Extended Term"), and the balloon payment of all outstanding principal and interest shall instead be due eight years after the Effective Date (which is expected to be December 31, 2021). During the Extended Term, Farm Credit shall receive monthly interest-only payments (on the last day of each month) in an amount equal to the Prime Rate plus one half percent (Prime Rate + 0.5%), which rate (unlike the Prime Rate that shall be fixed during years 3 and 4 of the Initial Term) shall be adjusted on a monthly basis based on the rate in effect on the first day of each month during the Extended Term.

Upon Farm Credit's receipt of the full payment of its Allowed Class 4 Claim, Farm Credit shall mark the promissory notes evidencing the FC Loans "paid in full" and return them to counsel for the Debtors and shall cause all of the documents encumbering the Woodstock Property, the Union Property and the Columbia Property to be released and/or cancelled.

Notwithstanding § 1141(c) or any other provision of the Bankruptcy Code, Farm Credit's Liens on the Woodstock Property, the Union Property and the Columbia Property will survive the Effective Date and continue until the Reorganized Debtors:

18

      (i)     satisfy the release provisions set forth below (at which time(s) such Liens will be partially released and extinguished with respect to the Released Property), and/or

      (ii)    pay the Allowed Class 4 Claim in full (at which time all remaining Liens on the Woodstock Property, the Union Property and the Columbia Property will be fully released and extinguished).

## Release Provisions

(A)    If the Reorganized Debtors:

- are not in default of their obligations to Farm Credit under this Plan;

- either (i) retain 300 feet for ingress/egress across the railroad (from U.S. 90) on the Woodstock Property or (ii) dedicate, grant or otherwise convey a public right-of-way to serve the same purpose[4], and

- tender Cash from any source (including, but not limited to, replacement financing, net sales proceeds (from land or timber sales), hunting lease revenues, capital contributions or Cash from any other source) in the amounts set forth in the below schedule of release payments (the "Release Schedule");

(B)    then Farm Credit shall be required to (x) immediately release its Liens on the respective Property set forth in the Release Schedule (the "Released Property"), and (y) when appropriate, subordinate its continuing Liens on the balance of the Property to appropriate easements for ingress and egress, utilities, drainage, maintenance and that are otherwise required for the Released Property to be developed and sold.

    After (i) tendering the Release Payments to Farm Credit, (ii) repaying the loan obligations (if any) due to the Sponsor or the Holding Company and (iii), if applicable, using the Holdback Amounts (as defined below) for replanting or land conversion purposes, the Reorganized Debtors will cause all excess net sales proceeds to be used (at the Reorganized Debtors' discretion) for business or operational purposes of the Reorganized Debtors, which shall include, without limitation, (a) replenishing the Interest Reserve Account and/or the Capital Expense Reserve Account, (b) paying operating expenses and (c) paying federal income tax liabilities (if any) that are incurred in connection with the business operations of the Reorganized Debtors, the Sponsor, Avery C. Roberts or the Holding Company.

---

[4] The ingress/egress area and, ultimately, public right-of-way shall be in a location that preserves the value of the entire Woodstock Property (as determined by Roberts Land in its sole discretion).

Release Schedule

| Released Property | Release Payment |
|---|---|
| Woodstock Property Acreage (including timber) | $7,000/acre |
| Union Property Acreage (including timber) | $2,000/acre |
| Columbia Property Acreage (including timber) | $250,000 (for all 96 acres) |
| Guarantors' homestead (including timber) | $862,000 (includes 20 acres) |
| Timber[5]<br>Pulpwood<br>Chip-n-Saw<br>Sawtimber<br>Hardwood<br>Cypress Mulch | Per Ton<br>$11.00<br>$15.00<br>$21.00<br>$5.00<br>$7.50 |

This Plan shall provide for the exclusive remedy for payment of any claim or debt whatsoever associated with the FC Loans so long as the Reorganized Debtors are not in default of their obligations to Farm Credit under the Plan. The Confirmation Order shall therefore temporarily stay Farm Credit from pursuing the Guarantors in connection with any of their continuing guaranties of the FC Loans (including without limitation (i) a Continuing Guaranty dated March 4, 2009 from Avery C. Roberts to Farm Credit in an amount not to exceed $11,273,137, and (ii) a Continuing Guaranty dated December 19, 2008 from Twyla J. Roberts to Farm Credit in an amount not to exceed $1,460,000) until the earlier to occur of (i) the Reorganized Debtors' uncured breach of their obligations to Farm Credit under this Plan, or (ii) the expiration of the Initial Term or the Extended Term (as appropriate).

**Additional Provisions Relating to Each Plan Treatment Options**

1.     Under each of the treatment options set forth in this Article 4.4 of the Plan, the Reorganized Debtors will retain all of their rights under their lending relationship with Farm Credit including, without limitation, their right of first refusal to purchase the Woodstock Property for the purchase price agreed to between Farm Credit and a bona fide third party purchaser pursuant to 12 U.S.C. Section 2219a(b) entitled "Application of right of first refusal to sale of property."

---

[5] If timber is cut on the Woodstock Property, the Union Property or the Columbia Property, then the Reorganized Debtors will attempt to obtain Farm Credit's agreement on a reasonable holdback amount to be used to either (i) clear or (ii) site prep and replant the area where the timber was cut (the "Holdback Amount"). If the parties are unable to agree to a Holdback Amount, then such Holdback Amount will be fixed by order of the Bankruptcy Court after notice and a hearing.

2.      *Voting*: Class 4 is Impaired and the Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors (or their principals) from pursuing their objections to Farm Credit's claims, or their Adversary Proceeding against Farm Credit.

4.5      Class 5: Community State Bank

*4.5(a) Secured Claim of Community State Bank (Receivables)*

*Classification*: Class 5(a) consists of the Secured Claim of Community State Bank against Roberts Land under Loan Number *5980 in the amount of $162,419.49 which is secured by a collateral assignment of accounts receivable secured by mortgages (the "Secured Receivables"). Roberts Land values its Secured Receivables at $176,027.85.

*Treatment*: Roberts Land shall pay Community State Bank the sum of $162,419.49 (less any principal amounts that have been received by Community State Bank) in monthly installments amortized at five percent per annum over a 20-year term each in the amount of $1,072.38; provided, however, that this indebtedness shall mature and be subject to a balloon payment of the entire principal balance and any accrued and unpaid interest on July 1, 2017. Community State Bank's Class 5(a) Claim shall be secured by continuing liens on the Secured Receivables.

*4.5(b) Secured Claim of Community State Bank (Real Property)*

*Classification*: Class 5(b) consists of the Secured Claim of Community State Bank against Roberts Land under Loan Number *5578 in the amount of $648,034.06 which is secured by a mortgage lien on real property situated in St. Johns County, Florida that has a value of $645,000 (the "St. Johns Property").

*Treatment*: The Debtor shall pay Community State Bank the sum of $645,000.00 (less any principal amounts that have been received by Community State Bank) in monthly installments amortized at 5.25% per annum over a 20-year term each in the amount of $4,346.29; provided, however, that this indebtedness shall mature and be subject to a balloon payment of the entire principal balance and any accrued and unpaid interest on July 1, 2017. Community State Bank's Class 5(b) Claim shall be secured by continuing liens on the St. Johns Property.

*Voting*: Classes 5(a) and 5(b) are Impaired and the Holders of Allowed Class 5(a) and 5(b) Claims are entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors from objecting to the Class 5(a) or Class 5(b) Claims for any reason.

4.6     Class 6: Unsecured Claims

*Classification*: Class 6 consists of all Unsecured Claims for amounts due and owing by the Debtors on unsecured debts relating to contracts, promissory notes and/or accounts and any deficiency amounts on Secured Claims.

*Treatment*: The Debtors shall pay Holders of Allowed Class 6 Claims an aggregate distribution equal to one hundred percent of such claims based on a ten year interest-free amortization schedule with a maturity date that is coterminous with the TD Debt Maturity Date. On a monthly basis (commencing 30 days after the Plan's Effective Date), each Holder of an Allowed Class 6 Claim shall receive equal interest-free payments equal to 1/120th of its Allowed Class 6 Claim. On April 9, 2016, the Holder of an Allowed Class 6 Claim shall receive a balloon payment in an amount equal to the unpaid balance of such claim. The only Holder of an Allowed Class 6 Claim known to the Debtors is TD Bank. As set forth in Article 4.3(b) hereof, TD Bank has an Allowed Class 6 Claim in the amount of $128,662.95. Therefore, TD Bank (or any Holder of its Allowed Class 6 Claim) shall receive an amount equal to its Allowed Class 6 Claim (less any principal amounts that have been received by TD Bank with respect to such claim) in payments of $1,075.36 per month (1/120th of $128,662.95) until April 9, 2016 (the TD Debt Maturity Date), at which point the balance of such claim shall be paid in full.

*Voting:* Class 6 is Impaired and the Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors from objecting to the Class 6 Claims for any reason.

4.7     Class 7: Equity Interests

*Classification*: Class 7 consists of all Interests in the Debtors.

*Treatment*: Holders of Interests in the Debtors shall retain such interests (subject to any dilution of the value of such Interests that may occur pursuant to the terms agreed upon between the Reorganized Debtors and the Sponsor in consideration of the Sponsor's Investment to recapitalize the Debtors).

*Voting:* Class 7 is Impaired and the Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtors from objecting to the Class 7 Claims for any reason.

Article 5
Treatment of Unclassified Claims

5.1     Pursuant to § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtors are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article 5 and the requirements set forth in § 1129(a)(9)(A) of the Bankruptcy Code.

The Debtors are current in their payment of their post-petition expenses and do not expect any Claims for goods received or services rendered. Until the Bankruptcy Case is closed, the Reorganized Debtors will timely pay their quarterly fees to the United States Trustee.

    5.2    Administrative Expense Claims.

    5.2.1 Subject to the provisions of §§ 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Debtors, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtors in the ordinary course of business, or otherwise assumed by the Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Petition Date, will be paid or performed by the Reorganized Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

    5.2.2 Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtors of their businesses (in the ordinary course of such businesses), shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within 30 days after the entry of the Confirmation Order. Contemporaneously with the filing of an Administrative Expense Claim, such Person shall also serve a copy of such claim upon counsel for Debtors. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtors or their Estates.

    5.2.3 Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within 60 days after the Effective Date or within the time set by the Bankruptcy Court.

The Debtors' attorneys' fees during the pendency of the Bankruptcy Case shall be paid as the same may be approved by the Bankruptcy Court. The Debtors may pay the attorneys' fees and other professional fees incurred after confirmation of this Plan without Court approval. The Debtors shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

Article 6
Means for the Implementation of the Plan

6.1     Parties Responsible for Implementation of the Plan. Upon confirmation, the Reorganized Debtors will be charged with administering the Bankruptcy Case. As such, the Reorganized Debtors will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtors will file all post-confirmation reports required by the United States Trustee's office. The Reorganized Debtors will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.

6.2     Restructuring Transaction. On the Effective Date, (i) Avery C. Roberts will transfer his interests in the Debtors to the Holding Company in return for an ownership interest in the Holding Company, and (ii) the Sponsor will tender the Investment to the Holding Company in return for an ownership interest in the Holding Company. The respective ownership interests of the Sponsor and Avery C. Roberts in the Holding Company shall be in amounts agreed upon by Avery C. Roberts and the Sponsor in their sole discretion. Further, the respective ownership interests of the Sponsor and Avery C. Roberts in the Holding Company shall be free and clear of all Claims, interests and encumbrances, pursuant to the Confirmation Order and §§ 105, 363, 365, 1123 and 1141(c) of the Bankruptcy Code and will constitute all of the issued and outstanding Interests in the Reorganized Debtors as of the Effective Date.

6.3     Sources of Cash for Distribution. The Debtors shall pay all Allowed Claims with (i) the Debtors' post-Petition Date income from the Secured Receivables, rental income from cattle grazing and hunting leases, (ii) income from the sale and development of real estate, (iii) management income (iv) the Investment and (v) if necessary, additional Cash provided by the Sponsor and/or a Lender.

6.4     Preservation of Causes of Action. In accordance with § 1123(b)(3) of the Bankruptcy Code, the Debtors will retain and may (but are not required to) enforce all Retained Actions. After the Effective Date, the Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtors (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Debtors (or any successors holding such rights of action). The failure of the Reorganized Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. The Reorganized Debtors reserve all causes of actions against current and

former customer(s) or tenant(s) for breach of any former or now existing agreement or otherwise.

6.5    Effectuating Documents, Further Transactions. The Debtors and their officers and designees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.6    Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to § 1146(c) of the Bankruptcy Code, any transfers from the Debtors to any other Person or entity pursuant to or in contemplation of this Plan (including the Reorganization Transaction and the Sponsor's acquisition of an equity interest in the Reorganized Debtors and/or Liens on the Union Property), or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property (or the Guarantor(s)' real property that is encumbered by Liens securing the Debtors' indebtedness to Farm Credit) will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.7    Further Authorization. The Debtors shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions of this Plan.

6.8    Liabilities of the Debtors. The Debtors will not have any liabilities except those expressly assumed under the Plan. The Debtors will be responsible for all operational expenses (defined as the normal and ordinary costs and expenses of operating the Debtors' businesses, including, without limitation, payroll and related taxes, insurance premiums, bank charges, maintenance costs, inventory costs, and all other costs of operations of any type arising after the Petition Date in connection with the operation of the Debtors' businesses, unless specifically excluded under the Plan) incurred by the Debtor in the ordinary course of business after the Petition Date, and such operational expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of any claims arising from operational expenses.

Article 7
Distributions

7.1    Disbursing Agent. The Reorganized Debtors shall act as the disbursing agent to make payments under the Plan unless the Reorganized Debtors appoint some other person or entity to do so. The Reorganized Debtors may maintain bank accounts

under the confirmed Plan in the ordinary course of business. The Reorganized Debtors may also pay ordinary and necessary expenses of administration of the Plan in due course.

7.2    Distributions of Cash. Any Distribution of Cash made by the Reorganized Debtors pursuant to this Plan shall, at the Reorganized Debtors' option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3    No Interest on Claims or Interests. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-Petition agreement in writing between the Debtors and a Holder, post-Petition interest shall not accrue or be paid on Unsecured Claims, and no Holder shall be entitled to interest accruing on or after the Petition Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

7.4    Delivery of Distributions. The Distribution to a Holder of an Allowed Claim shall be made by the Debtors (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtors are notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Debtors until such Distributions are claimed. All Cash Distributions returned to the Reorganized Debtors and not claimed within six months of return shall be irrevocably retained by the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary.

7.5    Distributions to Holders as of the Record Date. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Reorganized Debtors shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Debtors shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6    Fractional Dollars. Any other provision of this Plan notwithstanding, the Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7     Withholding Taxes. The Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 8
Procedures for Treating and Resolving Disputed Claims

8.1     Objections to Claims. The Debtors shall be entitled to object to Claims, provided, however, that the Debtors shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of this Plan. Any objections to Claims must be filed by the Claims Objection Deadline. This Plan defines the Claims Objection Deadline to be the later of the first Business Day which is (i) 30 days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

8.2     No Distributions Pending Allowance. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3     Resolution of Claims Objections. On and after the Effective Date, the Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 9
Executory Contracts and Unexpired Leases

9.1     Roberts Land is a party to a Lease Agreement with Wells Fargo Financial Leasing, Inc., as assignee and successor in interest to Tamco Capital Corporation ("Wells Fargo Lease"), with respect to an office communications system more particularly described and referenced in Proof of Claim Number 3-1 filed June 13, 2011.  Roberts Land and Wells Fargo Financial Leasing have negotiated and agreed to, subject to Court approval pursuant to a separate Motion for Approval of Compromise in accordance with Rule 9019, Federal Rules of Bankruptcy Procedure, a compromise by which Roberts Land shall pay Wells Fargo Financial Leasing the sum of $2,000 in full satisfaction, release and discharge of Proof of Claim Number 3-1 filed June 13, 2011.

Neither Debtor is a party to any other Executory Contract or Unexpired Lease, other than the hunting leases and cattle leases, which shall be assumed by the Reorganized Debtors on the Effective Date. These Unexpired Leases are not in default.

Any Executory Contract and Unexpired Lease that is not expressly assumed pursuant to (i) this Plan or (ii) a motion to assume shall be deemed rejected as of the

Effective Date pursuant to § 365 of the Bankruptcy Code. A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before 60 days after entry of the Confirmation Order. Any claims for rejection damages which are not timely filed shall be disallowed and discharged.

Article 10
Effect of Confirmation

10.1    Vesting of Debtors' Property. Except as otherwise explicitly provided in the Plan, on the Effective Date, all Property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors, except as specifically provided in the Plan. As of the Effective Date, Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2    Discharge of the Debtors. Pursuant to § 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, liens on, obligations of, rights against, the Debtors or their Estates that arose prior to the Effective Date. Additionally, the Plan shall not be construed as attempting to discharge any debt that is excepted from discharge pursuant to Bankruptcy Code §§ 1141(d)(2), 523(a)(1) and 524(e), including the Guarantors of the FC Loans; provided however, nothing contained herein shall be construed to preclude any Person from asserting any claim or defense in any legal proceeding relating to or arising from the confirmation of this Plan.

10.3    Setoffs. The Debtors may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtors may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that Debtors may have against such Holder of a Claim.

10.4    Exculpation and Limitation of Liability. Under the Plan, the Debtors and the Debtors' current and/or post-Petition Date and pre-Effective Date advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy

Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the Property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the Property to be distributed under the Plan.

10.5 Injunction.

10.5.1  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged and/or restructured pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors and the Reorganized Debtors, and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors or the Reorganized Debtors; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

10.5.2  As of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released and/or restructured are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities, or Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

10.5.3  Without limiting the effect of the foregoing provisions upon any Person, by accepting distributions pursuant to the Plan, each Holder of an Allowed Claim receiving distributions pursuant to the Plan is deemed to have consented to the injunctions set forth above.

10.5.4  Nothing in this Article 10.5 impairs (i) the rights of any Holder of a Disputed Claim to establish its Claim in response to an objection filed by the Debtors or the Reorganized Debtors, (ii) the rights of any defendant in an Avoidance Action filed by the Reorganized Debtors to assert defenses in such action, or (iii) the rights of any party to an Unexpired Lease or Executory Contract that has been assumed by the Debtors pursuant to an order of the Bankruptcy Court or the provisions of the Plan to enforce such assumed contract or lease.

10.6     Effect of Confirmation.

10.6.1  Binding Effect. On the Confirmation Date, the provisions of this Plan shall be binding on the Debtors, the Estates, all Holders of Claims against or Interests in the Debtors, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

10.6.2  Effect of Confirmation on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate and the permanent injunction set forth in Article 10.5 of this Plan (pursuant to § 524(a) of the Bankruptcy Code) shall be operative.

10.6.3  Filing of Reports. The Reorganized Debtors shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4  Post-Effective Date Retention of Professionals. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will employ and pay professionals in the ordinary course of their businesses.

Article 11
Conditions Precedent

11.1     Conditions to Confirmation. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.1.1  The Bankruptcy Court shall have approved the Disclosure Statement (as modified, amended and/or supplemented as necessary) with respect to this Plan in form and substance that is acceptable to the Debtors, in their sole and absolute discretion;

11.1.2 The Confirmation Order confirming the Plan, as the Plan may have been modified, has been entered and become a Final Order in a form and substance reasonably satisfactory to the Debtors; and

11.1.3 The Sponsor shall have delivered the Investment to the Debtors.

11.2     Conditions to the Effective Date. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to the Debtors in their reasonable discretion; and

11.2.3 The Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3     Waiver of Conditions to Confirmation or Consummation. The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by the Debtors without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

Article 12
Retention and Scope of Jurisdiction of the Bankruptcy Court

12.1     Retention of Jurisdiction. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1 To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2 To liquidate the amount of any Disputed, contingent or unliquidated Claim, to estimate the amount of any Disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any Disputed, contingent or unliquidated Claim;

12.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any of the Debtors' Executory Contracts or Unexpired Leases;

12.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtors;

12.1.5  To hear and rule upon all applications for Professional Compensation;

12.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estates and the payment of Claims;

12.1.10  To determine any suit or proceeding brought by the Debtors to recover property under any provisions of the Bankruptcy Code;

12.1.11  To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under this Plan;

12.1.12  To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13  To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of their Property during the Bankruptcy Case; and

12.1.15  To enter a final decree.

12.2    Alternative Jurisdiction. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3    Final Decree. The Bankruptcy Court may, upon application of the Debtors, at any time after "substantial consummation" of the Plan as defined in § 1101(2) of the Bankruptcy Code, enter a final decree in the Bankruptcy Case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing the Bankruptcy Case pursuant to § 350 of the Bankruptcy Code, provided, however, that: (a) the Reorganized Debtors shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (i) administering Property; (ii) entertaining any adversary proceedings, contested matters or applications the Debtors have brought or brings with regard to the liquidation of Property and the prosecution of Causes of Action; (iii) enforcing or interpreting this Plan or supervising its implementation; (iv) entering a discharge order; or (v) for other cause.

Article 13
Miscellaneous Provisions

13.1    Modification of the Plan. The Debtors shall be allowed to modify this Plan pursuant to § 1127 of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, the Debtors may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that such modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  The Debtors reserve the right in accordance with § 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2    Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3     Applicable Law. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Florida.

13.4     Preparation of Estate Returns and Resolution of Tax Claims. The Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under § 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5     Headings. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6     Revocation of Plan. The Debtors reserve the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7     No Admissions; Objection to Claims. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtors to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtors' rights to object to or reexamine such Claim in whole or in part.

13.8     No Bar to Suits. Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtors from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by the Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim. Without limitation, the Debtors retain and reserve the right to prosecute Retained Actions.

13.9     Exhibits/Schedules. All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

13.10   Conflicts. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## Article 14
### Tax Consequences

Tax consequences resulting from confirmation of this Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.

Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.

**The Debtors, as the proponents of this Plan, assume no responsibility for the tax effect that consummation of this Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interests are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.**

Respectfully submitted this 23rd day of August, 2013.

Roberts Land & Timber Investment Corp.

By_____
    Avery C. Roberts, President

Union Land & Timber Corp.

By_____
    Avery C. Roberts, President

THE DECKER LAW FIRM, P.A.

By   */s/ Andrew J. Decker, IV*
        Andrew J. Decker, IV

Andrew J. Decker, IV
Anthony W. Chauncey
Florida Bar Number 12745
Florida Bar Number 75023
Post Office Box 1288
Live Oak, Florida  32064
(386) 364-4440
(386) 364-4508 (facsimile)
andrewjdecker@thedeckerlawfirm.com
anthonywchauncey@thedeckerlawfirm.com

SMITH HULSEY & BUSEY

By   */s/ James H. Post*
        James H. Post

Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Attorneys for Roberts Land & Timber Investment Corp. and Union Land & Timber Corp.

<u>Certificate of Service</u>

I certify that a copy of the foregoing has been furnished electronically or by U.S. Mail to those parties on the attached mailing matrices, this 23rd day of August, 2013.

_____/s/ James H. Post_____

Attorney

00839632.12

Label Matrix for local noticing
113A-3
Case 3:11-bk-03851-PMG
Middle District of Florida
Jacksonville
Fri Aug 23 12:15:38 EDT 2013

American Express Bank FSB
c/o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Roberts Land & Timber Investment Corp.
Post Office Box 233
Lake Butler, FL 32054-0233

TD Bank, National Association, as the succes
c/o Jeffrey R. Dollinger, Esq.
1 SE 1st AVenue
Gainesville, FL 32601-6240

Wells Fargo Financial Leasing, Inc.
MAC F4031-050
800 Walnut St
Des Moines, IA 50309-3605

Avery C. Roberts
P.O. Box 233
Lake Butler, FL 32054-0233

Avery C. Roberts and Twyla J. Roberts
c/o Edward P. Jackson, Esq.
255 N Liberty Street, 1st Fl
Jacksonville FL 32202-2820

Community State Bank
Post Office Drawer 460
Starke, FL 32091-0460

Farm Credit of Florida, ACA
11903 Southern Boulevard, Suite 200
Post Office Box 213069
West Palm Beach, FL 33421-3069

Farm Credit of Florida, ACA, successor by me
to Farm Credit of North Florida, ACA
c/o Smith, Gambrell & Russell, LLP
Attn: Brian P. Hall, Esq.
1230 Peachtree Street, N.E., Suite 3100
Atlanta, GA 30309-3592

Florida Dept of Labor and Security
Hartman Building, Suite 307
2012 Capital Circle, Southeast
Tallahassee, FL 32399-6583

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Gilbert Weisman
Becket & Lee LLP
POB 3001
Malvern, PA 19355-0701

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Legacy Wildlife Services/
Natural Resources Planning Services
5700 S.W. 34th Street, Suite 324
Gainesville, FL 32608-5371

Mercantile Bank
Post Office Box 100201
Columbia, SC 29202-3201

North Florida Reforestation Services
Post Office Box 365
Lake Butler, FL 32054-0365

Roberts Land & Timber Investment Corp.
12469 West SR 100
Lake Butler FL 32054-5130

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

TAMCO Capital Corporation
4830 W. Kennedy Blvd., Suite 650
Tampa, FL 33609-2578

TD Bank, National Association
Scruggs & Carmichael, P.A.
One SE First Avenue
Gainesville FL 32601-1205

Timothy S Laffredi
135 West Central Blvd Suite
Orlando, FL 32801-2430

Twyla J. Roberts
P.O. Box 233
Lake Butler, FL 32054-0233

(p)U S SECURITIES AND EXCHANGE COMMISSION
ATLANTA REG OFFICE AND REORG
950 E PACES FERRY RD NE STE 900
ATLANTA GA 30326-1382

Union County Tax Collector
55 West Main Street, Room 108
Lake Butler FL 32054-1654

Union Land & Timber Corp.
Post Office Box 233
Lake Butler, FL 32054-0233

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

Wells Fargo Financial Leasing, Inc.
800 Walnut Street
MAC F4031-050
Des Moines, IA 50309-3605

Wendell W. Wheeler
439 S.W. Main Boulevard
Lake City, FL 32025-5268

Edward P Jackson +
255 N. Liberty Street, First Floor
Jacksonville, FL 32202-2820

James H. Post +
Smith Hulsey & Busey
225 Water St., Suite 1800
Jacksonville, FL 32202-4494

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2217

Jeffrey R Dollinger +
Scruggs & Carmichael PA
1 Southeast 1st Avenue
Gainesville, FL 32601-1205

Gilbert Barnett Weisman +
Becket & Lee LLP
16 General Warren Blvd
P O Box 3001
Malvern, PA 19355-0701

James R McCachren III+
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, FL 32202-3629

Timothy S Laffredi +
Office of the United States Trustee
400 W. Washington St., Suite 1100
Orlando, FL 32801-2440

Brian P Hall +
Smith Gambrell & Russell LLP
1230 Peachtree Street, NE
Suite 3100
Atlanta, GA 30309-3592

Anthony W. Chauncey +
The Decker Law Firm PA
Post Office Box 1288
Live Oak, FL 32064-1288

James H Cummings +
Smith Gambrell & Russell LLP
50 North Laura Street
Suite 2600
Jacksonville, FL 32202-3629

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


U.S. Securities & Exchange Commission
Reorganization Branch, Atlanta
3475 Lenox Rd., NE, Ste. 1000
Atlanta, GA 30326-1323


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Farm Credit of Florida, ACA

(u)Paul M. Glenn
Jacksonville

(u)Avery C. Roberts


(u)Twyla J. Roberts

(u)Wendell W. Wheeler

(u)Michael G Williamson


(d)American Express Bank, FSB
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355 0701

(d)Avery C. Roberts
Post Office Box 233
Lake Butler, FL 32054-0233

(d)Twyla J. Roberts
Post Office Box 233
Lake Butler, FL 32054-0233

Label Matrix for local noticing
113A-3
Case 3:11-bk-03853-PMG
Middle District of Florida
Jacksonville
Fri Aug 23 12:16:32 EDT 2013

Union Land & Timber Corp.
Post Office Box 233
Lake Butler, FL 32054-0233

Avery C. Roberts
Post Office Box 233
Lake Butler, FL 32054-0233

Community State Bank
Post Office Box 460
Starke FL 32091-0460

Farm Credit of Florida, ACA
Post Office Drawer 1259
Palatka, FL 32178-1259

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Robert Land & Timber Investment Corp.
Post Office Box 233
Lake Butler, FL 32054-0233

Roberts Land & Timber Investment Corp.
Post Office Box 233
Lake Butler, FL 32054-0233

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Tywla J. Roberts
Post Office Box 233
Lake Butler, FL 32054-0233

(p)U S SECURITIES AND EXCHANGE COMMISSION
ATLANTA REG OFFICE AND REORG
950 E PACES FERRY RD NE STE 900
ATLANTA GA 30326-1382

Union County Tax Collector
55 West Main Street, Room 108
Lake Butler FL 32054-1654

Union Land & Timber Corp.
12469 West SR 100
Lake Butler FL 32054-5130

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2217

Timothy S Laffredi +
Office of the United States Trustee
400 W. Washington St., Suite 1100
Orlando, FL 32801-2440

Brian P Hall +
Smith Gambrell & Russell LLP
1230 Peachtree Street, NE
Suite 3100
Atlanta, GA 30309-3592

Anthony W. Chauncey +
The Decker Law Firm PA
Post Office Box 1288
Live Oak, FL 32064-1288

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

U.S. Securities & Exchange Commission
Reorganization Branch, Atlanta
3475 Lenox Rd., NE, Ste. 1000
Atlanta, GA 30326-1323

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Farm Credit of Florida, ACA          (u)Paul M. Glenn          (u)Wendell W. Wheeler
                                        Jacksonville

End of Label Matrix
Mailable recipients    19
Bypassed recipients     3
Total                  22